JOSEPH JECKO ET AL., Appellants, *v.* ST. LOUIS FIRE AND
MARINE INSURANCE COMPANY, Respondent.

### June 10, 1879.

1. A provision in a fire-insurance policy against the termination of the interest of the assured in the property is not violated by the execution of a conveyance absolute on its face, but which is really a mortgage.

2. Such a provision is not violated by a foreclosure sale under a deed of trust which, owing to want of power in the person appointed to make the sale, is a nullity.

3. The title to an insurance policy does not pass by the assignment of a note which the insured property is given to secure, nor by an assignment of the property itself.

4. A fire-insurance policy is not assignable without the express consent of the insurer. The *delectus personæ* is material.

5. When the holder of a fire-insurance policy has parted with his interest in the insured property, an assignment of the policy after loss is void for want of interest in the assignor.

APPEAL from St. Louis Circuit Court.
*Affirmed.*

MARTIN & LACKLAND, for appellants : A transfer of property by way of mortgage does not constitute an alienation. — Wood on Fire Ins. 546, sect. 318. The fact that the deed is by way of security only, may be shown by parol testimony. — *Johnson* v. *Herston*, 17 Mo. 58 ; *Gutzweiler* v. *Lachman*, 28 Mo. 434 ; *Gaffney's Assignee* v. *Signago*, 1 Dill. 158. The creation of a mortgage or lien is not a breach of a condition against assignment or transfer of interest. — Wood on Fire Ins. 539, 545 ; *Ayers* v. *Hartford Ins. Co.*, 21 Iowa, 193 ; *Mt. Vernon Co.* v. *Insurance Co.*, 10 Ohio, 347. A conditional sale, although possession is given, is not alienation. — *Bates* v. *Insurance Co.*, 1 Cin. Superior Ct. 523. Such a contract does not terminate the interest of the assured. — *Jackson* v. *Ætna Ins. Co.*, 16 B. Mon. 242 ; *Shepherd* v. *Union Ins. Co.*, 38 N. H. 232. A mortgage has an insurable interest, and unless specially prohibited, the execution of a second mortgage does not

defeat the policy. — *Conover* v. *Insurance Co.*, 1 N. Y. 290 ; *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 385.   Hence the execution and delivery of the deed of December 3, 1874, to secure a loan of $1,000, did not constitute a breach of the condition pleaded.   An alienation, to produce a forfeiture, must be legal.   A void conveyance does not affect the policy. — Wood on Fire Ins. 540, sect. 312 ; *Pitney* v. *Glens Falls Ins. Co.*, 65 N. Y. 6 ; *Copeland* v. *Insurance Co.*, 6 Pick. 198.   Policies of insurance are assignable without notice to the insurer, where there is a covenant to pay to the assured or *his assignee.* — 2 Duer on Ins., sect. 35 ; *Mutual Protection Ins. Co.* v. *Hamilton*, 5 Sneed, 269 ; *Archer* v. *Manufacturing Co.*, 43 Mo. 434.

BROADHEAD, SLAYBACK & HAEUSSLER, for respondent : An assignment procured by fraud is void. — May on Ins., sect. 385 ; *Insurance Co.* v. *Mitchell*, 48 Pa. St. 374 ; *Battles* v. *Insurance Co.*, 41 Me. 217.   A transfer of the property is not of itself an assignment of the policy, and does not carry the policy with it. — *Cromwell* v. *Insurance Co.*, 39 Barb. 227 ; *Smith* v. *Insurance Co.*, 50 Me. 96.   An assignment after loss is not an assignment of the policy, but of a chose in action. — May on Ins., sect. 386, and cases cited.   The execution and delivery of a quitclaim deed, though in trust, is an alienation. — *Dadmun Co.* v. *Insurance Co.*, 11 Metc. 429.   The assignor had no insurable interest at the time of the fire, and it follows that appellants, as his assigns, have none. — *Morrison's Administrators* v. *Insurance Co.*, 18 Mo. 264 ; *Howard* v. *Insurance Co.*, 3 Denio, 301 ; *Fowler* v. *Insurance Co.*, 26 N. Y. 422 ; *Cromwell* v. *Insurance Co.*, 39 Barb. 233 ; *Abbott* v. *Insurance Co.*, 30 Me. 414 ; *Griswold* v. *American Central Ins. Co.*, 1 Mo. App. 97.   The loss, if any, was payable to the bank, *only* upon condition that the insured sustained loss, having fully kept his contract.—*Tallman* v. *Insurance Co.*, 29 How. Pr. 71.

BAKEWELL, J., delivered the opinion of the court.

This action is upon a policy of insurance against fire, issued by defendant to one Louis Hohenschild. The allegations of the petition are that Hohenschild, with defendant's consent, assigned the policy to the German Savings Institution as collateral to a note of $16,500 held by that bank and secured by deed of trust upon the premises described in the policy; that during the existence of the policy one of the houses insured was destroyed by fire, on August 20, 1875; that a month after the fire the bank assigned the deed of trust and note and the policy in suit to one Levin, to plaintiffs' use; and that Levin assigned them to plaintiffs, who hold them and own them.

The answer denies that Louis Hohenschild owned the property; denies notice of loss; denies that the bank had any interest in the policy, or that it assigned the same with defendant's consent; and denies that plaintiffs have any interest in the policy. Defendant says that when Louis Hohenschild obtained the policy he fraudulently represented himself as the owner of the property insured; that the record-title was in him, in trust for his father, William Hohenschild, and in fraud of creditors of William; that the bank then held notes and a deed of trust made by the father, and that defendant consented to the assignment to the bank; that the debt to the bank was paid before February, 1875, and the bank ceased then to have any right to the policy or to the deed of trust; that on February 25, 1875, before the fire, and before the alleged second assignment, a sale was had under the deed of trust, at which Jecko purchased and received a deed from Hospes as trustee, and that the plaintiffs, Jecko and Hospes, have ever since been in possession of the property as owners; that the title of Louis Hohenschild was in litigation at the date of the fire, and that he never had title to the premises. Defendant sets up a provision of the policy that it shall not be

assigned without written consent, and also a provision of
the policy that it shall not be assigned without written con-
sent; and also a provision of the by-laws, made part of the
policy, to the effect that in case of any transfer or termina-
tion of the interest of the assured, either by sale or by
process of law, without written consent of defendant, the
policy shall be void.   They say that there never was any
consent to the assignment by the bank to Levin, or by
Levin to plaintiffs, and that Louis Hohenschild had no in-
surable interest.   The trial was without a jury.   There was
a finding and judgment for defendant.

Plaintiffs introduced evidence tending to show the loss,
and waiver of proof of loss.   It appeared from the evidence
that William Hohenschild owned two pieces of insured real
estate, one on Bryan Street and the other on Kosciusko
Street, on which he gave a deed of trust, to secure a note
for $16,500, to one Van Dreveldt.   He conveyed this prop-
erty in 1870 to his son Louis, subject to the encumbrance.
William Hohenschild subsequently became the owner of
his own note, and executed another note to the German
Savings Institution, which he discounted there, giving the
real-estate note as collateral.   Afterwards, in 1873, Louis
Hohenschild obtained from defendant the policy in suit,
and on the same day assigned the same to the bank, by
written consent of the directors, the assignment setting
forth that the buildings and land had been conveyed by deed
of trust to the bank.   The assignment was made by filling
up blanks on a printed form on the back of the policy.
William Hohenschild died, having reduced the amount due
on the note to the bank to about $6,000.   The property
had depreciated in value, and Jecko, Hospes, and one Levin
agreed, in December, 1874, with Louis Hohenschild, that
they would buy from the bank the Van Dreveldt note, paying
to the bank the amount remaining due on the note for which
it was held as collateral.   This was done with the consent
of all parties.   The bank delivered up the collateral and
deed of trust to Jecko and Hospes.   The policy was not

delivered. Nothing was said about it; it seems to have been forgotten. The understanding with Louis Hohenschild was that Jecko and Hospes would sell the property under the deed of trust, retain the Bryan Street property, supposed to be then worth about $7,000, for their trouble and expenses and for the money advanced to pay the bank, and give the Kosciusko Street property, which was homestead, and worth about $5,000, to Louis. The foreclosure was made; Hospes being appointed trustee by the Circuit Court in place of the original trustee, who refused to act. The deed was made to Jecko for the two pieces of property, on February 25, 1875, the date of foreclosure. Jecko and Hospes took possession and collected the rents. Before the foreclosure, however, on December 5, 1874, Louis Hohenschild borrowed of Jecko $1,000, and to secure this amount gave to Jecko a quitclaim deed for the two lots. This deed was never recorded. After the foreclosure, Jecko borrowed $2,000 for Levin on the Kosciusko Street property, which was subsequently sold by foreclosure of their deed of trust. The fire occurred in August, 1875, and the German Savings Institution then assigned the policy to Levin for the use of Jecko and Hospes, and Levin assigned to them. These assignments are not countersigned by any officer of defendant. Levin was one of the original purchasers of the Van Dreveldt note, as has been said, but subsequently transferred his interest in the matter to Jecko and Hospes, by whom he was repaid his advance.

The owner of a judgment rendered against William Hohenschild on November 3, 1871, after the Van Dreveldt mortgage, sued on April 28, 1875, to set aside the conveyance to Jecko. This conveyance was void, because the appointment of Hospes as trustee was void; the law providing that the sheriff be appointed in case a trustee refuses to act. The court declared the Van Dreveldt deed of trust a valid lien, decreed the foreclosure sale to Jecko void, and the judgment a prior lien to the conveyance by William Hohenschild to his son. The property was sold under this decree,

and the equity of redemption was purchased by Hospes on May 30, 1876, for $130. It does not appear that defendant was notified of any of the conveyances made after the original assignment to the German Savings Institution.

We do not think it necessary, for the purposes of this opinion, to set out the declarations of law given and refused.

On the trial of the cause, counsel for plaintiffs introduced the by-laws of defendant, which are made part of the policy by its terms, and read the nineteenth section, which provides that in all cases in which property insured shall be alienated by sale or encumbered by mortgage the policy shall be void. Defendant, however, is barred by his pleadings. We can consider only the defences which he thus set up. The provision which he pleads is a provision of the by-laws, that, " in case of any transfer or termination of the interest of the assured, either by sale or by process of law," without written consent, the policy shall be void. It is claimed the quitclaim deed by Louis Hohenschild to Jecko was such a transfer. We think it was not. The testimony is that that instrument was merely by way of security. This might be shown by oral testimony, and this was thus shown. The execution of a mortgage or creation of a lien by contract is not a breach of the condition against transfer or termination of interest of the assured. *Shepherd* v. *Insurance Co.*, 38 N. H. 232 ; 3 Denio, 254 ; 5 Pick. 81. Besides, the testimony is that this mortgage was paid off before the loss.

It is contended that the conveyance by Hospes, as trustee, to Jecko was a transfer or termination of the interest of the insured. The Circuit Court, under the act of 1865, had power to appoint the sheriff to sell, where the trustee named in the deed refuses to act. But in *ex parte* proceedings the court had no power to appoint any person but the sheriff to perform the duties of the trustee. The appointment of Hospes was therefore a nullity ; and the conveyance by him, being void, could not be a breach of

the condition of the policy as to a transfer of the interest of the insured. Nothing passed by that deed.

The defence, however, upon which respondents appear chiefly to rely is the effect of the transfer of the policy by the German Savings Institution to Levin, and by Levin to plaintiffs. The policy is made payable to the assured or his assigns, but contains a clause that it "shall not be assignable without the consent of the president, and countersigned by the secretary." The policy, on the day of its date, was at once assigned by the assured to the German Savings Institution, in the following words: "Having conveyed by deed of trust the buildings within insured, and the land whereon they stand, to the German Savings Institution, I hereby assign to said Institution the within written policy, to hold as collateral security for the performance of the conditions of said conveyance." This assignment was made in accordance with the provision as to assent and signature of the officers of defendant. It is said by respondent that this assignment contains a fraudulent misstatement; that the assured had not mortgaged the property; that the property was mortgaged by his father, and that the mortgage was not to the German Savings Institution, but to Van Dreveldt. The transaction made evident by the policy and the contemporaneous assignment was this: that Louis Hohenschild, owning the property insured, desired to insure it for the purpose of securing the German Savings Institution, which held a note secured by deed of trust upon the property insured. It was wholly immaterial whether this deed of trust was actually made by Louis Hohenschild, or whether he acquired the property subject to the deed of trust. The only persons interested were Louis Hohenschild, and the bank holding the note, and the insurance company. The mortgage was a lien upon Louis Hohenschild's property, and he was interested in the insurance for that reason. The policy was manifestly issued to secure a promissory note held by the bank, which was a

lien upon, and must be paid out of, the property of the person seeking insurance. The substantial, material facts were correctly stated in the assignment, and the first assignment was effectual, and did not avoid the policy.

When the note held by the German Savings Institution was assigned by the bank to plaintiffs, together with the note held by the bank as collateral, and the deed of trust by which it was secured, nothing was said about the policy of insurance. The question is discussed in the briefs of counsel whether an assignment of the policy to plaintiffs without the consent of defendant would have forfeited the policy, and it is contended by appellant that, as the policy is not by express terms forfeitable for assignment without consent, an assignment that did not increase the risk would have given a right to sue to the assignee having an insurable interest. But the fact is that after the first assignment by the bank, which was indisputably good, the policy was not assigned during the existence of the risk. The assignment to Levin by the bank, and by the bank to Jecko, was made after the loss, when the claim against the company had become a chose in action, when the risk was determined, and when no assignment could forfeit the policy. The difficulty as to that assignment is, not that it was made in contravention of any provision of the policy, but that it was made by the German Savings Institution, which had long ceased to have any interest in the policy and in the property assured. The German Savings Institution had no claim against the insurance company, and had nothing to assign.

But it is contended that the assignment by the bank relates back to the transfer of the note. The assignees of the note, it is said, had a right to the policy, and it passed to them as an incident of the note, with the collateral which the bank held to secure the note assigned. The note, it is said, was negotiable; the policy was taken out on the day the collateral note was pledged to the bank, and on that day assigned to the bank by the insurance company, with the

manifest intention of protecting, not the German Savings Institution only, but whatever person might, in the course of business, become the holder of the negotiable promissory note which the deed of trust on the property insured was given to secure.

It is impossible to give this interpretation to the transaction. The person insured by defendant was Louis Hohenschild. Owing to the existence of a mortgage on the premises, the defendant agreed, at his request, that the contract should be assigned, or the money made payable in case of loss, to the German Savings Institution. But it did not agree to make payment to any other person, or to enter into any contract with any other person whom the first assignee might designate, or who might become interested in the property. The *delectus personæ* is material, and is an insuperable objection to affixing any such meaning to the transaction. The contract of fire insurance is a personal contract, and considerations of a personal nature largely enter into it. A prudent underwriter has regard to the character, as well of the person assured as of the property covered by the risk. In marine insurance of sea-going vessels, the rule, for obvious reasons, is not so strict; and cases of marine insurance to which we are referred are not, therefore, in point. Marine policies were usually made in blank. But fire-insurance policies at least are not assignable at law, and, whilst the risk continues, cannot be assigned, without the consent of the insurer; nor, in equity, can an assignment of the policy be ever made to enure to the benefit of the assignee, where there is a violation of any condition of the policy by such assignment. Marine policies are sometimes considered as rather assurances of the thing than of the person, but fire policies are special agreements only with the person insuring; they do not attach to the realty, or go with the same as incidents, by any assignment or conveyance of it, or of any interest in it. "They are not in their nature assignable, nor is the interest in

them ever intended to be transferable from one to another without the express consent of the officers." *Carpenter* v. *Insurance Co.*, 16 Pet. 503.

In the present case, after the attempted foreclosure of the deed of trust the present plaintiffs were mortgagees in possession, having complete control of the insured premises, collecting rent on their own account from the tenants. The defendant did not know them in the matter.

It is argued that no transfer which does not divest the insured of all interest in the policy is a violation of a simple clause against assignment, and that the clause prohibiting assignments is not violated by a pledge or mortgage of the policy. This may be true enough, but it is altogether aside from the question. We are not considering what would have been the effect of a pledge of this policy by the German Savings Institution or by Hohenschild. No such pledge was in fact made. Whether the bank or Hohenschild might have lost their interest in the policy by pledging it to plaintiffs, is not the question. They never pledged the policy, for it remained forgotten in the bank. They never assigned it during the risk. The assignment after the fire was futile, because it could have been no more than an assignment of a right of action against the company for the loss. This the bank could not assign, for it had parted with all interest in the property assured, and had no claim against the company to assign.

The assignment of the mortgage was no more an assignment of the policy of insurance, and no more carried the policy with it, than would a sale of the property insured. It would, moreover, be inconsistent with the manifest intention of all the parties to give it such an interpretation. The plaintiffs did not regard themselves as assignees of the policy. At the time they purchased the note of the bank, it was with the intention of remaining in the position of mortgagees only until the foreclosure could be effected. As they supposed, this was done; and they regarded them-

selves, from the date of the sale by Hospes as trustee, as holding the legal title to the premises. They must therefore have looked upon the policy to the former owner as dead, or at least as completely in abeyance. Accordingly, they never asked about the policy until after the loss. By that time it has been ascertained that the foreclosure was void.

The judgment of the Circuit Court was for the right party, and was the only judgment warranted by the undisputed facts of the case. Whether the theory indicated by the giving or refusing of instructions was correct, it is useless to inquire. For the reasons given, the judgment must be affirmed. It is so ordered. All the judges concur.