## QUARLES *v.* CLAYTON.

### (*Nashville.*  February  12,  1889.)

1. FIRE INSURANCE.  *Nature of contract.*

   Contract of fire insurance is mere personal indemnity against loss to the person with whom it is made, or those falling within the scope of its provisions.

   Cases cited and approved: Hobbs *v.* Insurance Co., 1 Sneed, 444 ; 73 N. Y., 447 ; S. C., 29 Am. Rep., 180 ; 93 N. Y., 75 ; S. C., 45 Am. Rep., 176.

2. SAME.  *Construction of policy.  Loss payable, to whom.*

   Under a fire policy upon a dwelling-house, providing that loss should be "payable to the *assured, his executors or administrators,*" and prohibiting any change in title or possession of the property insured, " except by *succession by reason of death of the assured,*" the widow oc-

Quarles *v.* Clayton.

cupying and having a life estate in such dwelling-house, *by virtue of her marriage contract with the assured*, has no interest, legal or equitable, in funds due upon loss occurring after the assured's death. She takes by *purchase*, not by "*succession*."[*]

*Aliter*, if widow had been entitled to dwelling as homestead or dower.

*Question reserved:* Would *heirs* or *next of kin* take the funds arising from such loss?

Cases cited and approved: Galyon *v.* Ketchen, 85 Tenn., 55; 8 Paige, N. Y., 436; 101 U. S., 436; 112 Ind.; 535 S. C.; 2 Am. Rep., 219.

3. SAME. *Same. Insurer's option to rebuild.*

That the insurance company, having the option, chose to pay the loss instead of rebuilding the premises affords no ground of equity in the widow's favor.

## FROM RUTHERFORD.

Appeal from Chancery Court of Rutherford County. W. S. BEARDEN, Ch.

JOHN E. RICHARDSON for Quarles.

PALMER & PALMER for Clayton.

LURTON, J. The deceased husband of appellant took out a policy of fire insurance upon his dwelling, loss payable to the assured, his executors, or administrators. Before the expiration of the policy by time, but after the death of the assured, the house was accidentally burned. The insurance com-

---

[*] Could the Insurance Company have availed itself of this conveyance of a life estate in the insured property to defeat this policy?—REPORTER.

pany, by consent of the claimants, paid the loss into the hands of the defendant, under an agreement that the fund should be held subject to the legal rights of complainant, if any she had, to be thereafter determined by the courts. An agreed case was made up and submitted to the Chancery Court, and from the decree of the Chancellor Mrs. Quarles has appealed.

Appellant. is the widow of the assured, and claims a life estate in the fund upon the following state of facts:

Before her marriage to the assured a marriage contract was entered into and duly executed in the county of their residence, by which, among other things not material to be here mentioned, it was agreed: "That all the property and estate, both real and personal, now owned or hereafter to be acquired by said John W. Quarles, shall continue to be his, and shall remain wholly unaffected by said contemplated marriage with said Mrs. Nancy M. Kirk, in favor of whom no marital or other rights in his said property and estate shall attach or inure by virtue of said contemplated marriage relation, further or otherwise than is expressed and provided in this instrument, and he hereby reserves the right and privilege of making such suitable provision for her out of his estate as he may at any time desire, either by deed of gift, last will and testament, or otherwise. If he die without making any such provision for her, then she shall, out of his real estate, if she survives him, have a

comfortable home, to consist of say about one hundred and forty acres of his lands, *in which will be included his dwelling and outhouses*, the same to be surveyed and laid off to her by proper metes and bounds, and in such manner as will be most useful and convenient to her, and with least injury to his estate. This home so laid off to her to be and remain to her own proper use, support, and benefit for and during the term of her natural life, and after her death to take such directions as he may give to it by his last will and testament, or other proper mode of disposing of real estate, and if he die without any will, and without disposing of the remainder interest in said "home" as above provided for and described, then the same shall descend to his proper heirs, and be distributed according to the laws of the State of Tennessee."

After the marriage the dwelling house above described, which was then and after the residence of Mr. Quarles and wife, was insured, under a contract, as before stated, that the loss should be paid to the assured, the husband of appellant, his executors, or administrators.

Mr. Quarles died intestate, and without having made any provision for his widow other than that contained in the marriage contract. The widow continued to occupy the dwelling as her residence until it was destroyed by fire. The portion of the farm of the decedent which was to be assigned to her under the marriage agreement had not at the time of the fire been laid off by metes and

bounds, but this was subsequently done to the satisfaction of all concerned. This estate was so laid off, as required by the contract, as to include the outhouses of the assured, and likewise the site of the burned mansion house. The insurance policy was not taken out upon any agreement or contract, express or implied, that she was to have any interest whatever therein.

Under this state of facts, has appellant any equitable or legal interest in the proceeds of this fire policy. That the precise boundaries of the one hundred and forty acres to be laid off to her had not been ascertained by • survey at the time of the fire can cut no figure, because it was to be laid off in all events so as to include the mansion house and outhouses. It seems equally clear that she cannot hold the estate of her husband responsible for the value of the house, because at his death her contingent right to the house for her life ripened and became a vested interest for her life, and at the moment her husband died intestate, and without having made any other provision for her, the house was standing, and her right to the use and possession at once accrued. Her interest became at once an insurable interest, and the destruction of the house by any means after her husband's death was not an injury for which his estate or his heirs would be responsible.

Whatever right she had to any interest in this fund must arise from the contract of insurance. The person assured against loss in the policy paid

upon the premises of Mrs. Quarles was the owner himself. By all the authorities, a contract of fire insurance is a personal contract, and assures the interest alone of the assured in the property, in the absence of some agreement or trust to the contrary. The policy taken out by Mr. Quarles contained the usual provision prohibiting any assignment of the policy without the consent of the insurer. It also contained the further stipulation that the policy should become void "in case any change shall take place in title or possession, *except by succession by reason of death of the assured.*" These provisions have been upheld by the Courts as reasonable conditions, limiting and restricting the liability of the insurer. That they are reasonable is obvious when we consider that the contract is one for the personal indemnity of the assured against a loss affecting his interest in the property covered by the policy. The insurer contracts with reference to the character of the assured for integrity and prudence. He might be very willing to agree to make good the loss of one by the destruction of property owned by him, while he would be altogether unwilling to insure the same property if owned by another. Again, the contract undertakes to make good any loss which the assured may sustain, and from this it follows that if the assured has parted with his interest before the loss, he cannot ask to be indemnified because he has sustained no loss. The provision against change of title is therefore in precise harmony with the per-

sonal character of the contract. In some fire insurance contracts the stipulation against change of title extends so far as to make the policy void should such change o 1 title be brought about by the death of the assured. The title in such case is no longer in the assured, but has by the law passed to his heirs, or by will to his devisees, and a change of title so accruing has been held to defeat an action for a loss occurring after the death of the assured. *Sherwood* v. *Agricultural Insurance Company*, 73 N. Y., 447; S. C., 29 Am. Rep., 180; *Hine* v. *Woolworth*, 93 N. Y., 75; S. C., 45 Am. Rep., 176.

The contract is not therefore one which attaches to or follows the property, being one for the personal indemnity of the assured, and when the insurer does not assent to the assignment of the' policy to the grantee of the property, neither the assured, nor his assignees of the property, can recover upon the policy. *Hobbs* v. *Insurance Company*, 1 Sneed, 444.

But this policy was not annulled by the change of title which occurred by the death of the assured. It expressly provides that a change of title shall defeat the policy, except where it occurs " by *succession by reason of the death of the assured.*" The legal effect of this exception is to continue and extend the policy, notwithstanding the change of title by death of the assured. In whose favor is this continuance? It has been ably argued that the effect of this continuance is in favor of those who,

by "succession," take the property covered by the
risk, and that though it may be payable to the
executor or administrator of the assured, yet he
will, in case the risk was upon real estate, take
and hold in trust for those who, by succession, have
taken the property, and who are therefore the per-
sons damnified by the loss. This word "succession,"
in the connection in which it appears, is a word
of technical meaning, and refers to those who by
descent or will take the property of a decedent.
It is a word which clearly excludes those who take
by deed, grant, gift, or any former purchase
or contract. This meaning is made more obvious
when we consider that the contract provided against
*any change* of title except by succession, and to
more directly affix a limited and technical meaning,
the explanatory words added, "*by reason of the
death of the assured.*"

There is much plausibility in the argument that
inasmuch as the policy is continued, notwithstand-
ing a change of title has occurred, that in case
the risk is upon real estate, that the extension is
by intendment of the contract to operate as an'
indemnity to those who by "succession" have be-
come the owner of the property. In such a case
the administrator or distributee would not have any
interest to be insured, while the heir or devisee,
upon whom the title has been cast, would be the
legal and equitable owner and the person to suffer
by loss.

The root principle of insurance being that the

loss is payable only to the extent that the assured had an insurable interest, would seem to preclude the administrator in such a case from any recovery, or make him a trustee for the heir of what he should recover when the loss occurred after the property had passed by "succession" to the heir. This seems to be the holding of the Courts when the question has arisen, although the text-book writers seem not to have seized upon the distinction. *Wyman* v. *Wyman*, 26 N. Y., 253; *Culbertson* v. *Cox*, 29 Minn., 309; S. C., 43 Am. Rep., 204. But does the appellant take any interest in the insured property by succession? If she had taken as dowress, or under the homestead laws, she would be within the principle just discussed, and would be within the express holding of the two cases last cited. Unfortunately for this litigation, appellant takes whatever interest she has in the property under the fire policy by virtue of her marriage contract. She is not entitled to homestead or dower, for she expressly agreed to take in lieu of all rights which the law would have given her, the provision which she covenanted for by marriage contract. This interest was a contingent one. It depended upon two events — first, that she should survive her husband; and second, that he should not, by deed or will, make any other provision for her. Both of these events occurred, and instantly upon the death of her husband she became seized of an estate for her life in the insured premises. She therefore took this

mansion house as the grantee of her husband and did not take it by "succession." But it is insisted that, however she acquires her estate, she has an equitable interest to a life estate in this fund, because it represents the premises which she had a right to occupy and enjoy during her life. This presents a strong case in morals, but her legal rights are not so clear. The rule is well settled that no equity attaches upon the proceeds of a fire policy in favor of third parties who, in the character of grantee, mortgagee, or creditors, may have sustained loss in the absence of some trust or contract to that effect. May on Insurance, Sec. 456; 3 Kent's Comm., 10th Ed., 499.

This rule applies as well to vendors and lienors of every class as to mortgagees who may have had their security impaired by a loss by fire. This Court, in a well considered case, held that the holder of a mechanic's lien upon a building had no equitable lien on a fire policy effected by the owner and assigned to a mortgagee. *Galyon* v. *Ketchen*, 1 Pickle, 55.

An equity will attach where the vendee or mortgagor was, by covenant or otherwise, bound to insure the property for the better security of the vendor or creditor. In such case the latter would have, to the extent of their interest in the property destroyed, an equitable lien upon the money due on a policy taken out by the mortgagor or vendee, or other debtor who had given a security upon the insured property, and this would be so even

though the policy stood in the name of the debtor, vendee, or mortgagor. But in the absence of some such agreement the mortgagor, or vendee, or grantee, having an insurable interest, might insure such interest for his own benefit, and no lien would attach thereto in favor of his creditors secured by lien or mortgage, or otherwise, upon the insured property. *Carter* v. *Rockett*, 8 Paige, N. Y., 436; *Wheeler* v. *Insurance Co.*, 101 U. S. Rep., 436; *Nordyth* v. *Gery*, 112 Ind., 535; S. C., 2 Am. Rep., 219; Sheldon on Subrogation, Secs. 233–235.

The agreed state of facts upon which this case is submitted fails to show any covenant, contract, agreement, or understanding, that Mr. Quarles should insure this property for the benefit of appellant. The interest of appellant after the death of her husband was an insurable one; so was the remainder interest of the heirs. The decedent having left no debts, and the distributees being the same persons who take the real estate as heirs, no controversy can arise between the administrator and the remainder-men. That the insurance company had the option to rebuild is urged as a reason why the insurer's election to pay instead of rebuild ought not to operate to the disadvantage of complainant. This option is one common to all contracts of fire insurance, and the agreement, if good in this case, would operate to overturn the well-settled rule that no equity attaches to the proceeds of a fire policy in favor of third persons

who have suffered loss in the absence of some agreement to that effect. If this option to pay or rebuild should be granted as a sufficient ground to found an equity upon in favor of a third person disappointed by the election of the insurer, the law of insurance would have to be rewritten. There is no privity between appellant and the insurer, and no action of his can be ground to give her an interest which she would not otherwise have.

The decree of the Chancellor will be affirmed.