Minshall, O. J.
1. The first question pre-1 sented arises on the second defense. The evi-j denee sustained the reply of the plaintiff to the[ effect that the instrument was simply a mortgage.!
A separate written instrument was gpven by Rhodes stating, that the conveyance was given to secure the payment of a promissory note to him, by Clark and wife, for $2,000, and his liability for them on an injunction bond; and expressly stipulated that the conveyance “was in the nature of a security ” to him for the above purposes. Hence, it was simply a mortgage. It seems well settled m this state and elsewhere, that the making of a mortgage does not violate a provision in a policy of insurance, that any change in the title, interest or possession of the assured in the property, without the assent of the insurer, shall avoid the policy.
The mortgag’e being- simply a security for the debt, is extinguished by its payment without any re-conveyance. The mortgage of itself does not make the mortgagee a freeholder, and a judgment recovered against him does not become a lien on the land, nor is it liable to the dower-rights of his wife. It has none of the incidents of a legal or equitable title. True, upon foreclosure and sale, the mortgagee may by purchase at the sale become the owner of the land; but this is a right he enjoys *424 in common with all others. It is also true, that as between the mortgagor and mortgagee, the latter, on condition broken, is regarded as the legal, but not as the equitable owner. The mortgagor remains the equitable owner until the property is sold under the order of the court. Until then he may, by paying the debt, redeem the land. So that his insurable interest in the property remains the same — which is the interest meant by the use of the word in the language of the policy, where it occurs. If lost by fire he remains liable on the debt, and has, by reason of the loss, so much the less property with which to pay it. Hence, he has the same interest in its preservation after as before, making the mortgage; and the moral hazard of the insurer is not increased. Byers v. Insurance Co., 35 Ohio St., 606; Kronk v. Insurance Co., 91 Pa. St., 300; Insurance Co. v. Stinson, 103 U. S., 25, 29; Barry v. Insurance Co., 110 N. Y., 1; Judge v. Insurance Co., 132 Mass., 521; Bryan v. Insurance Co., 145 Mass., 389; Insurance Co. v. Spankneble, 52 Ill., 53; Insurance Co. v. Lawrence, 2 Peters Rep. 25; Jecko v. Insurance Co., 7 Mo. App., 308; Guest v. Insurance Co., 66 Mich., 98; May on Insurance, see. 272.
The general current of authority is in accordance with these cases; and while a different view has been taken by the courts of some of the states, it will be found that, as a rule, this has proceeded from the old conception that a mortgage is to be regarded as a conveyance; or from a more rigid adherence to the terms of the policy, in disregard of the rule that provisions imposing forfeitures should be strictly construed.
In giving effect to the language of any instrument, regard must be had to its purpose: A mere *425 change in title, where the owner retains the same actual interest in the property — the same insurable interest — is not within the reason of the language employed. The object of the provision containing the language was to protect the insurer against a possible change in the owner’s insurable interest in the property by a sale, transfer or conveyance, whereby the hazards of the contract into which he had entered might be increased without his consent. Hence, the generality of the language employed must be restrained to the reason and object of its use by the parties. To do otherwise would be to stick in the letter of the language employed by the parties to express their meaning, without regard to its. spirit. May on Insurance, sec. 273; Ayres v. Insurance Co., 17 Iowa, 176, 185.
Hence, so far as the second defense is concerned, the undisputed evidence shows that there was no error in the court directing a verdict for the plaintiff. The execution of the conveyance being simply a mortgage, did not affect the title nor interest of the mortgagor in the property, Barry v. Insurance Co., supra, and whether made with or without the consent of the company, is immaterial.
2. The principal question in the case arises upon the third defense — the taking’ of additional insurance without the consent of the company. There was evidence tending to show that there was no consent; so that the correctness of the ruling cannot be affirmed, unless, as a matter of law, it was immaterial. _ And this, upon a construction given to section 3643, Revised Statutes, is what is claimed. It is not claimed but that before the statute, the facts stated would have constituted a defense to any recovery on the policy, but it is claimed that under this statute, the taking of additional insur *426 anee -without the consent of the company, 'does not avoid the policy, unless it is averred and shown that it increased the risk. The court is of a different opinion, and think that the statute has no application to the case. It reads as follows :
“Section 3643. Any person, company, or association, hereafter insuring any building or structure against loss or damage by fire or lightning, by renewal of a policy heretofore issued, or otherwise, shall cause such building or structure to be-examined by an agent of the insurer, and a full description thereof to be made, and the insurable value thereof to be fixed by such agent; in the absence of any change increasing the risk without the consent of the insurers, and also of any intentional fraud on the part of the insured, in ease of total loss, the whole amount mentioned in the policy or renewal upon which the insurer receives a premium shall be paid, and in case of a partial loss the full amount of the partial loss shall be paid; and in case there are two or more policies upon the property, each policy shall contribute to the payment of the whole or the partial loss in proportion to the amount of the insurance mentioned in each policy; but in no case shall the insurer be required to pay more than the amount mentioned in its policy.” This section has been considered by this court in a number of cases. Insurance Co. v. Leslie, 47. Ohio St., 413; Moody v. Insurance Co., 52 Ohio St., 12. It is not our purpose to question the soundness of either of these cases, when limited and applied to its facts. A careful reading of the statute will disclose, as we think, a simple purpose on the part of the legislature to limit it to such matters connected with the physical condition of .the property — its - value, structure and surround *427 ings, as might have been discovered in the examination required to be made by the agent of the company, on an application by the owner for insurance, and not to include or extend to things that would require an examination of records, or anything else outside of the physical condition and situation of the property; certainly not, to a knowledge of things that then had no existence, and could not be divined from anything the examination required to be made by the agent, might disclose. As stated in the syllabus of Insurance Co. v. Leslie, it is “a condition or situation of the property at the time of the insurance which the examination the agent is required by the statute to make, should have reasonably discovered,” that will not defeat a recovery on the policy. In other words, no exception can be taken by the company to anything within the purview of the examination, after issuing the policy; and if any change takes ■place in the condition of the property, increasing the risk, it must be set up as a defense by the company.
The construction claimed for the statute by the defendant in error, is placed upon the generality of the words in the clause of the statute following that which directs the making of an examination by the agent of the company. This examination relates only to the physical condition of the property, and, therefore, by the ordinary rules of construction, the general languageimmediately following, should be limited to a change in such things as come within the purpose of the examination. So interpreted, they can mean no more than that, in the absence of any change in the physical condition of the property increasing the risk, the full amount of the insurance shall be paid, in case of a total loss. *428 If it had been intended to enlarge the meaning so as to embrace other matters made material by the terms of the policy, more apt words could and, as we think, would have been used. The language would have been so introduced as not to be naturally restrained by the context to a more limited meaning-. Confining the meaning’ of the language “in the absence of any chang’eincreasing the risk” to what precedes, gives effect to all that is claimed as the purpose of the legislature in enacting’ the statute — the prevention of the evils connected with over insurance, by making companies liable for the full amount insured, after issuing a policy therefor and receiving premiums proportioned to the valuation of the property, made by their agents on an examination of the premises.
As confirming this view as to the construction of the statute, it is difficult to see how an issue of fact could be taken and tried on the question, whether the taking’ of additional insurance, in a given case, did, or did not increase the risk. The fact must generally be the same in all cases, and therefore becomes a question of law, and cannot be changed by averment. Its importance to the insurer, and the reason for the insertion of a stipulation against additional insurance without his consent, is, doubtless, based upon the generally observed fact, that the care of an owner for the preservation of his property is in direct proportion to his interest in it. Therefore, an insurer having stipulated for protection against a lessening of the owner’s interest in the property insured, without his consent, may he, in a particular case, be deprived of the benefit of the stipulation by an averment, that the plaintiff differs'from men in general, and would take the same care of his *429 property whether his interest in it is much or little? Without stopping to inquire whether the legislature might establish such a ground of defense, the absurdity of such an issue is good reason for saying, that such an intention cannot be inferred from the mere generality of the words used in this section of the statutes. It would involve an inquiry somewhat novel in courts. The reception of evidence to prove that a man is as good as his fellows in general, is not unusual, but, to prove that he is better and more to be trusted, is seldom if ever gone into. It would be difficult, if not impossible, for a jury to return a'verdict after the most exhaustive inquiry. As a rule, sel- ■ fishness is at the bottpm of all human conduct. If you would know what a man would be likely to do in a given case, learn what it is to his interest to do. In the absence of any interest, he is likely to do nothing.
The conclusions reached do not trench upon what was decided in either of the preceding cases. In Insurance Co. v. Leslie the answer averred that the property was unoccupied at the issuing of the policy, which was contrary to the representation of the insured. The fact that it was vacant could readily have been discovered by an examination; and the court held that there was no fraud in the representation if made; for if the examination required by the statute had been made, the fact that it was not occupied would have appeared. In Moody v. Insurance Co., it was averred that the property became vacant after the issuance of the policy without the consent of the company, but the answer did not aver that it increased the risk. Occupancy in any case may be determined by an examination of the property. It is a physical fact *430 open to view; and so within the general language of the statute when restrained to the meaning disclosed by its context. A change in this regard does not, by the statute, invalidate the policy unless it increase the risk, which must be averred, and proved if denied. This is what, as we understand it was decided on the subject before us, in the case just referred to.

Judgment reversed, and cause remanded for a new trial.