W. B. WILMURTH, APPELLANT, v. NATIONAL LIBERTY INSURANCE COM-
PANY OF AMERICA, A CORPORATION; THE METROPOLITAN LIFE IN-
SURANCE COMPANY OF NEW YORK, A CORPORATION; AND JACK
HESSELBEIN, RESPONDENT.—206 S. W. (2d) 730.

Springfield Court of Appeals.   December 5, 1947.

W. *Clifton Banta,* Charleston, Missouri, attorney for appellant.

*Finch* and *Finch,* Cape Girardeau, Missouri, attorneys for respondent.

VANDEVENTER, J.—This is a suit on a fire insurance policy written by the National Liberty Insurance Company of America (hereafter referred to as the insurer) which policy contained the following provision:

" . . . it is stipulated and agreed that if . . . any change shall take place in title or interest or possession (except by succession by reason of the death of the insured) of the property herein named, or any part thereof; or if the insured shall not be the sole and unconditional owner of said property, or any part thereof; . . . then in each and every one of the above cases this entire policy shall be null and void."

The date of the policy was May 4, 1944, but it insured the plaintiff for three years from the 24th day of April, 1944. On the 20th day of October, 1944, plaintiff entered into the following contract with one of the defendants, Jack Hesselbein.

## CONTRACT TO PURCHASE

IT IS AGREED and entered into by and between *Ben Wilmurth* of *Scott County, Mo.* hereinafter known as party of the first part, and *S. B. Hardwick* of *Sikeston, Mo.* representative of the owner, and *Jack Hesselbein of Vallejo, Cal.* hereinafter known as party of the second part, to-wit:

"WITNESSETH: That, the said party of the first part hereby agrees to sell, and the party of the second part hereby agrees to purchase, the following describe property viz: (Land described.) subject to easements, if any existing, for public roads, highways, right of ways for railroads and ditches on or touching same.

"The purchase price of above described property is *$9828.00* and the terms of payments are as follows: *$1000.00* with the signing of this contract, as earnest money and part payment on said property, and *$2094.00* to be paid as soon as the title to above described proper-

ty is made merchantable, and deed is ready for delivery; the remainder of the purchase price to be paid as follows: *Seller deducts $292.10 and allows same from his equity for interest on the loan against the above land for the year 1944. Purchaser to assume a loan in favor of the Metropolitan Life Ins. Co., in the amount of $6337.50. If there should be a slight difference either way when it is ascertained about the correct amount of loan both parties agree to an adjustment accordingly.*

"*The seller also agree to pay the 1944 taxes and does hereby deduct same from the amount coming to him. Said amount of taxes and interest being figured off the amount of $3094.00 due the seller as set out above.* All deferred payments are to be evidenced by notes secured by a mortgage or deed of trust on above described property, dated same date as warranty deed, and are to draw ———% interest, payable ——— annually. *Instead of a deed a Real Estate Contract is to be assigned on the above property.*

"Said Second Party hereby agrees that he will keep the buildings on the herein described land insured for as much as possible until all deferred payments are paid in full, and in case of loss by fire or storm the proceeds of said insurance shall be used to replace the buildings or be applied on the purchase price of above described land.

"Owner of above described property is to furnish an abstracts, brought down to date as soon as the abstractor can do the work, showing good and merchantable title to above described property, free and clear of all liens, taxes and incumbrances, except as herein set out, and said second party is to have ten days after receiving the abstract to examine the title. If any objections arise to the title, said second party is to furnish to first party a list of the objections, and present owner is to have sufficient time to correct same to a mercantable title, and the time of closing this deal is to be extended accordingly.

"If no objections to the title are reported in writing to First Party within ten days after date Second Party receives the abstract it shall be construed as acceptance of the title and this deal is to be closed on or before the date mentioned herein.

"Said Second Party hereby purchases above described property subject to all taxes and assessments for the year *1945* and thereafter with the understanding that all taxes for the year *1944* and all prior years are paid.

"Said Second Party purchases above' described property subject to the present tenancy and rights of tenants, and is to receive all rents and revenues from said property that becomes due and payable after *Jan. 1, 1945.* Full possession to be given *Jan. 1, 1945.*

"It is hereby agreed and understood that if First Party complies with his part of this contract and said Second Party fails or refuses to comply with his part of this contract, then in that event the said Second Party hereby agrees to forfeit to First Party the earnest money paid herewith as liquidated damages.

"The herein described property having been inspected and investigated, no representations, agreements, verbal understandings or promises of any kind, by either party, other than those contained in this contract will be recognized.

"This contract shall be binding on the heirs, administrators or assignings of the parties hereto.

"This deal is to be closed at *Sikeston, Mo.* on or before *Jan. 1, 1945,* or as soon thereafter as the title is found to be merchantable by some practicing, reputable attorney, furnished by either First Party or Second Party.

"Signed in triplicate this the *20th* day of *October, 1944*

(Signed) BEN WILMURTH
(First Party)

(Signed) S. B. HARDWICK
Agent of First Party

(Signed) JACK M. HESSELBEIN
(Second Party) "

The matter italicized was written in the above contract with a typewriter and the matter not italicized, except signatures, was part of the printed blank contract.

This policy insured certain buildings on land, the legal title to which was in the Metropolitan Life Insurance Company, one of the defendants, (which will for brevity hereinafter be referred to as the Metropolitan). The Metropolitan, owner of the property, had, on the 20th day of October, 1942, entered into a sales contract with W. S. Clay, wherein the consideration was stated as $8,175.00 to be paid $1,000.00 in cash upon execution of the contract, $675.00 on December 1, 1942 and twenty-two equal annual installments of $455.00 each, beginning January 1, 1944, to and including January 1, 1965 and a final installment of $887.25 due January 1, 1966, with interest at the rate of 4½ percent, deed to be delivered when certain amount was paid, etc.

On the 30th day of March, 1943, all of the right, title and interest in and to this contract and to the property described therein was assigned by W. S. Clay to W. B. Wilmurth, the plaintiff, who assumed and agreed to make all the payments due under the contract and to fulfill all the agreements and stipulations therein prescribed. It was while the plaintiff was holding the premises as above detailed that the policy was issued. The insurer's agent knew of the character of plaintiff's tenure when the policy was written. The property insured was destroyed by fire on November 19, 1944 and on December 20, 1944, pursuant to his contract, the plaintiff executed and delivered to Hesselbein the following assignment:

"In consideration of $1 and other valuable considerations, the undersigned W. B. Wilmurth of Mississippi County, State of Missouri does hereby assign all his right, title and interest in and to the attached

contract and the property described therein to Jack Hesselbein; and the undersigned Jack Hesselbein do hereby assume and agree to pay all the payments due under the said contract and agree to fulfill all the agreements and stipulations therein prescribed.

"In Witness Whereof the said parties have hereunto set their names and seals this 20th day of Dec., 1944.

W. B. WILMURTH     (seal)

JACK M. HESSELBEIN     (seal)

On November 7, 1945, plaintiff filed this suit. The insurer defends upon the ground (among others) that by the contract of October 20, 1944, plaintiff had violated the provisions of the policy, which recited it would be void if there should be any change in title or interest or possession of the property named.

A jury was waived and after hearing the evidence, the court found against plaintiff and for the insurer upon the above contention.

We shall first address ourselves as to this question: Did the contract of October 20, 1944 cause such a change in plaintiff's interest in the insured property, or any part thereof, as to render the policy void under the above quoted provisions?

Provisions in fire insurance policies declaring the policy void, if the insured shall voluntarily make any change in his title, interest or possession of the property insured have been held to be reasonable, valid and binding. 45 C. J. S. Page 318, Sec. 562. The reasons for such a provision in a policy is well stated in Moseley v. Northwestern Nat. Ins. Co., 109 Mo. App. 464, 84 S. W. 1000.

"The purpose of such provisos in insurance contracts is to prevent the interest of the insured party in the subject of the insurance from being diminished; to keep the insured as much concerned to take care of the property and guard against its loss by fire during the entire life of the policy as when it is first issued. The moral risk in these contracts is of great moment to companies. That is to say, the character of the party insured, and the motive he has for safeguarding the insured property from loss, is important. If his interest may be diminished without affecting his right to recover on the policy, an incentive will be created to burn the property in order to get the proceeds of the policy, while the incentive to take care to prevent the property from burning will be lessened. Clauses of the kind in question are designed to obviate that risk of loss to insurance companies which arises from weakening the motive of the party insured to prevent a loss by fire."

The liability is limited to the person contracted with and for his loss on the interest he then owns. A material diminution of that interest is a breach of the contract and renders it void:

"These provisions have been upheld by the courts as reasonable conditions, limiting and restricting the liability of the insured. That they are reasonable is obvious, when we consider that the contract is one for the personal indemnity of the assured against a loss affecting his

interest in the property covered by the policy. The insurer contracts with reference to the character of the assured for integrity and prudence. He might be very willing to agree to make good the loss of one, by the destruction of property owned by him, while he would be altogether unwilling to insure the same property if owned by another. Again, the contract undertakes to make good any loss which the assured may sustain; and from this it follows that, if the assured has parted with his interest before the loss, he cannot ask to be indemnified because he has sustained no loss." (Quarles v. Clayton, 87 Tenn. 308, 10 S. W. 505, l. c. 506.)

If (the policy) is a personal contract between the insurer and insured, and is not a contract in *rem*. It insures the owner contracted with against any loss he may sustain but does not insure the property against fire. It does not run with the property unless expressly so stipulated. Millard v. Beaumont, 194 Mo. App. 69. Doggett v. Blanke, 70 Mo. App. 499. Jecko v. St. Louis F. & M. Ins. Co., 7 Mo. App. 308. Draper v. Delaware State G. M. Ins. Co., 91 A. 206, 28 Del. 143. In the last cited case, it was said:

"A contract of insurance is essentially a personal contract. Traders' Ins. Co. v. Newman, 120 Ind. 554, 22 N. E. 428. It is not a contract to insure property against fire, but is one to insure the owner of property against loss by fire. Destruction by fire of the property described in the contract of insurance is not the contingency upon which the insurer promises to indemnify the insured. It is only when by fire the insured has sustained a loss that the insurer may be called upon to perform its contract of indemnity." See also Huber v. Penn Mutual Fire Insurance Co. (Del.) 33 A. (2d) 729.

Certainly the contract with Hesselbein gave him an equitable interest and he could, by a suit for specific performance, compel plaintiff to make the assignment agreed upon. 49 Am. Juris. Page 107, Sec. 92, 100-116. 58 Corpus Juris, Page 913, Sec. 71. Miller v. Dyer, 20 Cal. (2d) 554, 127 Pac. (2d) 901. 141 A. L. R. 1429. Waggoner v. Saether, 267 Ill. 32, 107 N. E. 859. Miedema v. Wormhoudt, 288 Ill. 537, 123 N. E. 596. Welch v. McIntosh, 89 Kan. 47, 130 Pac. 641. Hancock v. Hancock (Ky.), 15 Am. Dec. 92.

After the assignment contracted to be executed, he could have brought an action for specific performance and compelled the Metropolitan to make him a deed to the farm, provided he had complied with the provisions relating to payments, etc. Pomeroy v. Fullerton, 21 S. W. 19, 113 Mo. 440. 49 Am. Juris. Page 173, Sec. 150. 58 Corpus Juris Page 913, Sec. 70.

The case nearest in point in this state that has been cited to us, or which we have found through our own independent investigation, is Manning et al. v. North British & Mercantile Ins. Co., 99 S. W. 1095, 123 Mo. App. 456. In that case H. L. McElroy had a policy on a building in Kansas City for a period of five years. He sold the prop-

erty to Manning and his wife and with consent of the company transferred the policy. Afterwards on September 19, 1904, Manning entered into a written contract with J. M. Molesworth, whereby Molesworth sold to Manning a farm, and, as part of the purchase price Manning was to convey to Molesworth the building in Kansas City. Deeds were to be made upon payment of the cash balance and deeds were afterwards made. After the contract to sell was executed and before the deeds were made and before possession was given, a fire destroyed the building. In the policy was a provision against any change in interest, title or possession of the property insured, stating that, in case of such change, the policy should be void. Manning brought a suit on the policy and the defense was, it was void by reason of the change of interest. There was a judgment for plaintiff in the trial court but the court of appeals reversed the case. The court said:

"We believe the judgment is not supported by the facts under settled rules of law applicable thereto. At the time of the fire, plaintiff had made a valid and binding contract, selling the property to Molesworth for $1,250. That contract vested an equitable interest in the property in Molesworth. He thereby obtained a right to the legal title, which he, in fact, did afterwards get by regular conveyance. The loss occasioned by the destruction of the house was Molesworth's loss, and not plaintiff's; and if we allow plaintiff to recover he will be obtaining compensation for that which he did not lose. He sold his house before it was burned. He has conveyed by deed as he agreed to do when he sold it, and he has gotten the entire consideration for which he sold it . . .

"A valid contract of sale of real estate puts the equitable title in the vendee, although he may be out of possession. After a valid contract of sale of real property and before a deed is made the vender merely holds the legal title in trust for the purchaser and, if there be unpaid purchase money, as security therefor. All must agree that after a valid contract of sale all appreciation (of) the property is the purchaser's, and so, also necessarily, all depreciation. So, therefore, in all jurisdictions, where, as in this state, the property is at the risk of the purchaser between the execution of a contract of sale and of a deed, it must be held that the execution of such contract, binding upon both parties, changes the interest of the seller and brings him within the terms of the provision in the contract of insurance above set out and avoids the policy."

In the case now before us plaintiff had no legal title. That was lodged in the Metropolitan. By virtue of an assignment from Clay, plaintiff had an equitable title and that fact is recognized in the contract with Hesselbein. If Hesselbein could compel plaintiff to execute the assignment of the contract of sale by the Metropolitan, and could compel the Metropolitan to convey the premises after Hesselbein had complied with all the terms of the contract of sale, then Hesselbein

must have had some interest, less, of course, than the legal title. He could only have procured that interest from plaintiff. If he did, there must have been a change in plaintiff's interest. That change would make the policy void according to its plain provisions, for the reason it lessened plaintiff's interest in the property and accordingly lessened his incentive to protect the property. But this contract went further than a mere agreement to assign. $1,000.00 on the purchase price was paid down at the time of its execution, $2,094.00 was later paid and Hesselbein assumed the remaining indebtedness on the premises. It certainly must have been agreed to and understood between the parties that there was a present transfer of plaintiff's interest because Hesselbein obligated himself to keep the buildings insured until all deferred payments were made in full and, in case of a loss by fire, to use the money recovered to replace the buildings or apply on the purchase price. Plaintiff testified that it was his understanding that Hesselbein was to take over the insurance. The contract further states that Hesselbein "hereby purchases above described property" with the understanding that 1944 taxes will be paid but subject to 1945 taxes. Plaintiff testified that he never demanded payment of the amount of the loss from the insurer until Hesselbein threatened to sue him. Another thing, at the date of the trial, plaintiff had received everything that he was to get for the property. He had been paid in full. If Hesselbein loses by the transaction, it is because he failed to insure the premises in compliance with his contract. A default was rendered against Hesselbein at the trial because he failed to appear and plead to the petition.

In Hubbard et al. v. Home Ins. Co. of New York, 205 Mo. App. 316, 222 S. W. 886, Judge Bradley, speaking for this court, said:

"It seems that the rule in this state respecting insured real property is that, if the insured without the consent of the insurer, makes a contract to sell vesting the equitable title in the purchaser, the purchaser acquires such an interest as to constitute a breach of an insurance contract containing a change of interest clause as here."

The opinion further distinguishes between "title" and "interest" asserting that the word "interest" means some right in property less than "title."

In Russell v. Home Ins. Co., 216 Mo. App. 244, 262 S. W. 385, plaintiff sued on a policy which contained a provision similar to the one in question here. The plaintiff had given a contract for a deed to the Bank of Hartville, which bank was also named in the policy as a mortgagee, under the usual mortgage clauses, and to which the defendant was obligated to make payments in case of a fire. The court held that this was not such a change in interest as to render the policy void because the Bank of Hartville was not a stranger to the proceedings, and said:

"Under this state of facts, we have no hesitancy in saying that had this contract been made with an outside party, one whom the insurance company had not recognized in the policy of insurance, such transaction under Missouri authorities would have rendered the policy void. See Hubbard v. Home Insurance Co., 205 Mo. App. 316, 321, 222 S. W. 886; Manning v. Insurance Co., 123 Mo. App. 456, 99 S. W. 1095; Snyder v. Murdock, 51 Mo. 175; Springfield Steam Laundry v. Traders' Insurance Co. of Chicago, 151 Mo. 90, 52 S. W. 238, 74 Am. St. Rep. 521; American Fire Ins. Co. v. Ellison, 269 Mo. 410, 190 S. W. 679."

See also National Fire Insurance Co. v. Munger (Mo. App.), 106 S. W. (2d) 10.

In this case, Hesselbein was a stranger to the insurance contract.

The contract made by plaintiff on the 20th of October and before the fire materially changed his interest in the property insured and rendered the policy void because of the provision against change of interest.

Plaintiff cites Smith v. Snodgrass (Mo. App.), 246 S. W. 968, which was an action on a promissory note. Defendant pleaded failure of consideration, and by way of counterclaim asked judgment in the sum of $2,000.00, the amount paid to plaintiff under the terms of a contract made between them at the time the note was given, electing to rescind the contract because it was breached by plaintiff. Briefly, the facts are: Sowers owned a farm and contracted to sell it to Hartley, deed to be delivered when certain payments were made. Hartley contracted to sell the farm to plaintiff, which contract was substantially the same as Sowers contract to him, although that contract was not specifically mentioned. Plaintiff contracted to sell the farm to Snodgrass, the defendant, for which he received $2,000.00 in cash, a note for $2,000.00 (the one sued on) and, "all further payments on said real estate are to be made as per contract made and entered into by and between C. W. Sowers and T. J. Hartley" the same being held in escrow by a named bank. The total purchase price was $20,000.00. Sowers failed to make a deed to Hartley but returned his initial payment. Hartley did not and could not legally deed the farm to plaintiff for he had no title. Plaintiff could not deed the farm to defendant for plaintiff had received no deed from Hartley, yet plaintiff kept the $2,000.00 he had received in cash and sued on the $2,000.00 note. Defendant elected to rescind because of plaintiff's failure to deliver title and the trial court held he could and the court of appeals affirmed it, holding that plaintiff had no rights in the Sowers-Hartley contract and could not assign it, that there was a failure of consideration by reason of his inability to deliver title and he could not recover on the note and must return the $2,000.00 payment by defendant.

Mackintosh v. Agricultural Fire Ins. Co., 150 Cal. 440, 89 Pac. 102,

cited by appellant is not in point. The contract there was an option to purchase that was never exercised. The court there said:

"Taking the circumstances thus surrounding the parties and the language of the contract together, we are of the opinion that it was not an absolute agreement on the part of Baker to purchase the property, but was simply an option whereby he had the privilege of purchasing the same at any time within the 60 days mentioned, by payment of the price as therein provided. There was therefore no change of interest in the premises by virtue of the contract. The title, interest, and estate in the property remained in Mackintosh, subject to be divested only by the payment of the money as provided in the contract. Upon failure to pay the money as provided therein, without any further act whatever on the part of Baker, the privilege to purchase, which he had obtained under the contract, ceased, and the property then remained free from any right in him whatever."

Neither is Ayres v. The Home Insurance Co., 21 Iowa 185 in point. There, a title bond was assigned as security for a debt with no intention to permanently pass assignor's interest.

In the case before us the insurer was not estopped to assert its defense because it had not returned the unearned premium. It is not asserting that the policy was void from the beginning. The policy had been in full force and effect until the change of interest by the plaintiff and this change was unknown to the insurer until after the fire. It was still bound to the Metropolitan by a "Loss Payable Clause" whereby it agreed to pay any loss over $50.00 to the Metropolitan regardless of any " . . . . act or neglect of the . . contract. purchaser" (plaintiff here.) The one premium paid was for the entire obligation and insurer was still bound to the Metropolitan. Indeed, it acknowledged this liability and tendered the amount of the policy into court for the Metropolitan to be paid when it was subrogated to the Metropolitan's rights to that amount under the sale contract. The "Loss Payable Clause" provided for this right of subrogation.

Doerr v. National Fire Ins. Co. of Hartford, 315 Mo. 266. 285 S. W. 961, l. c. 965.   54 A. L. R. 1336.

The insurer was not completely released from its contract. Miller v. Insurance Co. of North America, 106 Mo. App. 205, 80 S. W. 330. Schaefer v. Home Ins. Co. (Mo. App.), 194 S. W. (2d) 718.   Horn v. Farmers Mutual Ins. Co. (Mo. App.), 79 S. W. (2d) 531.

Plaintiff offered evidence that the contract was written on a printed blank, did not mean what it said when completed, and tried to show that there was no actual agreement for Hesselbein to keep the premises insured from the date of the contract, on the theory that there was a mutual mistake between the parties. The court heard this evidence and decided against plaintiff and we think rightly so. It was at most a decision on a question of fact that we cannot overturn.

Neither did the court err in excluding evidence of an understanding between plaintiff and Hesselbein, at the time the assignment was actually executed, that any insurance money collected was to be applied on the debt to the Metropolitan. Such a contract could not bind the insurer. It was not a party to it.

Finding no error in the record, the judgment of the trial court should be affirmed. It is so ordered. *Fulbright, P. J.,* not sitting. *Blair, J.,* concurs.