D. M. WATT, *Appellee,* v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

No. 16,513.

SYLLABUS BY THE COURT.

1. RAILROADS—*Injury to Stock—Shipment under Written Contract or the Common Law—Question of Fact.* In an action by a shipper against a railroad company to recover damages for injuries to stock alleged to have been caused by delay in transportation, where the principal question in dispute was whether the shipment was made under a written contract, as the defendant claimed, or under the common law, as the plaintiff claimed, and the evidence was conflicting, it was error for the court to hold as a matter of law that the contract was not binding on the plaintiff.

2. CONTRACTS—*Execution by Agent—Evidence of Ratification.* Upon the evidence in this case it was error to deny a request

for an instruction to the effect that if the plaintiff used the contract under which the defendant claimed the stock was shipped in order to secure a return pass from the point of destination, and thereby obtained from the defendant something of value which he would not otherwise have obtained, he must be held to have ratified the execution and signing of the contract, although he may not have expressly authorized anyone to sign it for him.

3. EVIDENCE—*Admissions—Abandoned Pleading.* While an abandoned pleading no longer serves to define the issues, it has some evidentiary force in the nature of an admission on the part of the pleader, and should be received in evidence for what it is worth.

Appeal from Bourbon district court; JOHN C. CANNON, judge. Opinion filed May 7, 1910. Reversed.

*John Madden,* and *W. W. Brown,* for the appellant.
*John H. Crain,* for the appellee.

The opinion of the court was delivered by

PORTER, J.: The plaintiff sued to recover for injuries to a carload of· horses shipped from Fort Scott, Kan., to Fort Worth, Tex. The petition alleged that the shipment was under a written contract, a copy of which was attached thereto. The horses were shipped on the afternoon of September 14, 1906, and it is claimed that they should have arrived at Fort Worth in about thirty-six hours, which would have been Sunday morning; that, in fact, they arrived Monday morning; that they were *en route* about twenty-seven hours longer than they should have been; that the car was left standing at different places on the road for several hours, and was switched around to such an extent that the horses were crowded and several of them were injured.

The court sustained a demurrer to the petition, presumably on the ground that there was no allegation that the plaintiff had given written notice of the injuries, as provided in the written contract. The plaintiff then filed an amended petition, setting up a common-law

shipment and alleging that the averment in the former petition to the effect that the horses were shipped under a written contract was a mistake of fact, made by his attorney, and that there was no contract in writing. The answer was a general denial, and an averment that the shipment was made under a written contract, a copy of which was attached to the answer as "Exhibit A," which is identical with the contract set out in the first petition. The answer then alleged as a defense the failure of the plaintiff to give written notice of the claim, and also that the plaintiff by the terms of the contract released the value of the horses to $100 per head. There was a further defense that in accordance with the United States statutes the defendant was compelled to unload the horses for water, feed and rest, which it did. The reply was a verified denial of the written execution of the contract or that the same was signed by anyone having authority from the plaintiff to sign his name.

On the trial the evidence showed that D. M. Watt, the plaintiff, had bought and shipped horses and mules for several years; that in 1906 he made from twenty-five to thirty shipments to Texas; that he ordered the car for the horses in question through an employee of the horse-and-mule market at Fort Scott. This employee gave the order to the station agent of the defendant by telephone. The company set the car out at the place requested, and it was loaded and the shipment made.

The plaintiff testified that he usually made his shipments under contracts similar to "Exhibit A"; that he went to the railway station on the day of the shipment in question for the purpose of signing a contract; that he found no one at the station and came away without seeing the agent. He did not go with the horses, but took a passenger train to Fort Worth. After the horses were shipped, and on the same day, he sent one McLaughlin, an employee of the horse-and-mule market, to the station agent to procure the contract and mail it

to him at Fort Worth, so that he might get a return pass. The evidence is that when McLaughlin asked the agent for the contract the agent requested him to sign the same, and to sign it P. M. Watt instead of D. M. Watt, because that was the name of the shipper as the agent understood it over the telephone. McLaughlin signed it P. M. Watt and received a duplicate copy, which he sent to the plaintiff at Fort Worth. Across the face of it appeared in red ink the words, "contract signed by Edd McLaughlin." At Fort Worth the plaintiff took the duplicate sent to him to the live-stock agent of the company, and by means of it received transportation from Fort Worth to Fort Scott, which he used.

The defendant offered in evidence the plaintiff's first petition, with "Exhibit A" thereto attached. The court sustained an objection to this on the ground that there was no evidence to show that the plaintiff had ever had anything to do with the contract or was bound by it in any way. This was manifestly error. While the abandoned pleading no longer served to define the issues, it was some evidence, in the nature of an admission, on the part of the plaintiff, and should have been received for what it was worth. (*Reemsnyder v. Reemsnyder*, 75 Kan. 565, 570; 1 Encyc. Pl. & Pr. 625, 626; 16 Cyc. 971, 972.)

The defendant also offered in evidence a copy of the order of the railroad commissioners permitting railroads to limit their common-law liability on shipments of freight. The copy was properly certified by the secretary of the board. An objection to this was sustained. In the same connection the defendant offered to prove by the agent at Fort Scott that he was in possession of the tariffs which governed the rates of stock shipments at the time the horses were shipped, and that there were two rates in force over the defendant's line—one for shipments made under a contract like "Exhibit A," and another twenty per cent higher under the common law;

that these tariffs had been duly filed with the interstate commerce commission, and duly published in accordance with the laws of the United States. To this evidence an objection was also sustained. The court appears to have held as a matter of law that there had been no proof offered by the defendant showing the execution of a written contract binding upon the plaintiff. Apparently for the same reason, the court denied a request for an instruction asked by the defendant to the effect that if the plaintiff used the contract known as "Exhibit A" after the shipment was made, in order to secure a return pass from Fort Worth, and thereby obtained from the defendant something of value which he would not otherwise have obtained, he must be held to have ratified the execution and the signing of the contract, although he may not have expressly authorized anyone to sign it for him.

We think the court erred in sustaining the objection to the evidence and in refusing the instruction. Whether the written contract under which the defendant claimed the horses were shipped was the contract of the plaintiff was a disputed question of fact. The issue was squarely raised by the pleadings. The plaintiff does not appear to have produced any evidence at the trial that his attorney was mistaken in the facts at the time the first petition was drawn. On the contrary, there is evidence that before the petition setting up the written contract was filed the plaintiff and his attorney secured copies of the contract from the agent of the defendant at Fort Scott. The abandoned pleading, as we have seen, contained some evidence tending to show a written contract binding on the plaintiff. In addition to this, there was evidence which tended to show that the plaintiff had ratified the act of his agent in signing the contract. There is no question that it was the intention of the plaintiff to execute a contract with the form and character of which he was familiar, and that he was only prevented from doing so by being unable

Watt v. Railway Co.

to find the station agent. He authorized another person to get the contract for him knowing that in order to do so it must be signed, and afterward used it knowing all the facts with respect to its execution, its terms and conditions, and by means of it received a return pass, which he could not have obtained except for the contract. These facts were all in evidence, and from them a jury would have been justified in finding that he ratified what his agent did and was as much bound by it as if he had signed the contract himself. (*Ehrsam v. Mahan,* 52 Kan. 245; *McKinstry v. Citizens' Bank,* 57 Kan. 279; *Aultman v. Knoll,* 71 Kan. 109.) It was said in the syllabus of *McKinstry v. Citizens' Bank,* supra:

"One who accepts the benefits of a contract, made without authority in his behalf, after being fully informed of all its terms, must also accept the burdens imposed on him by the contract."

The court should have admitted in evidence the original contract, as well as the abandoned pleading and the other evidence offered for the purpose of showing that the plaintiff, with full knowledge of the terms and conditions of the contract, had ratified it by accepting the benefits which it conferred. The court could not say as a matter of law that there was no evidence showing that a contract in writing was executed which was binding upon the plaintiff. For the same reason the evidence offered by the defendant for the purpose of showing authority from the board of railroad commissioners permitting the defendant to limit its common-law liability on shipments of freight, and the fact that there were two tariffs in existence covering shipments of the kind in question, should have been admitted. The instruction asked correctly stated the law as to the ratification of the unauthorized acts of an agent, and should have been given. (*Aultman v. Knoll,* 71 Kan. 109, and cases cited.)

There is a further complaint because the court re-

fused to submit to the jury the following special questions:

"(1) Did plaintiff, or some one for him, sign and deliver to the defendant company a written contract covering the shipment?

"(2) Did the plaintiff, or some one for him, execute the written contract offered in evidence as 'Exhibit A'?

"(3) Did not plaintiff take 'Exhibit A' at Fort Worth and obtain thereby a pass from Fort Worth to Fort Scott for himself?

"(4) Did the plaintiff, by the use of 'Exhibit A' at Fort Worth, Tex., obtain from the defendant the service of passing him back to destination free of charge?"

The questions related to facts which were directly in issue, and the defendant was entitled to have the finding of the jury thereon.

Other questions are argued in the brief which are not deemed necessary at this time to pass upon, for the reason that on another trial they may not be raised. For the reasons stated the judgment is reversed and the cause remanded for another trial.