No. 23,450.

Francis T. Weber, *Appellant,* v. Fred B. Gardner, *Appellee.*

SYLLABUS BY THE COURT.

1. QUIETING TITLE—*Against Illegitimate Son*—"*General and Notorious*" *Recognition of Illegitimate Son by His Father—Inheritance.* In an action to quiet title by the grantee of collateral heirs against the illegitimate son of the deceased owner, the evidence examined, and held to support the trial court's finding and judgment that the recognition of the son by his father was "general and notorious"; within the rules prescribed by the statute under which an illegitimate son can inherit from his father.

2. SAME — *Plaintiff in Possession — Title in Defendant — Plaintiff Entitled to Compensation for Improvements Made.* Plaintiff purchased a town lot from the collateral heirs of the deceased owner. He made improvements on the property which enhanced its value. Plaintiff brought an action to quiet his title against the illegitimate son of the deceased owner. The son's "general

and notorious" recognition by his father was established, and the son's title prevailed. *Held*, that before the plaintiff can be dispossessed he is entitled to receive compensation for the enhanced value of the property occasioned by plaintiff's improvements.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed January 7, 1922. Affirmed in part and reversed in part.

*B. F. Bowers*, of Ottawa, for the appellant.
*Ralph E. Page*, of Ottawa, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was a suit to quiet title, the plaintiff claiming under the collateral heirs of one J. T. Ellis, and the principal defendant claiming as his recognized illegitimate son. The defendant prevailed.

Plaintiff appeals, contending that there was not sufficient evidence to prove general and notorious paternal recognition of plaintiff under the statute.

"They [illegitimate children] shall also inherit from the father whenever they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing." (Gen. Stat. 1915, § 3845.)

That defendant was the son of Ellis, although disputed below, is not contested here. But on the question of recognition, it is contended that there was *no* evidence. Our reading of the record will not permit us to assent to this contention. It is shown that Ella Gardner, an unmarried woman, residing in the neighborhood of Lane, in Franklin county, gave birth to defendant in 1887. Ellis was arrested in a bastardy proceeding, but made provision for the child and the case was compromised and dismissed. The child's mother married and moved away. Plaintiff was reared by his grandmother. Ellis was a bachelor who operated a blacksmith's shop near-by. Plaintiff used to frequent the shop and Ellis often gave him small sums of money. When the boy grew older, he got into trouble in some way and Ellis loaned him money to pay his fine. Ellis discussed the boy's future with neighbors in a matter-of-fact way as if his parental relationship to the lad was generally known and understood. Instances of this sort were numerous. One witness, a lawyer of Osawatomie, testified that Ellis and he had often talked of the boy as being the son of Ellis, and on one occasion, out of many, he said to Ellis: "Jim, you better take that boy and raise him and make a blacksmith out of him." Ellis replied, "Well, maybe I will some time."

As the years passed and the defendant grew to manhood, he took to railroading. Ellis became proud of him, and often talked with a witness whose son did not show such good qualities as defendant. They discussed the relative merits of his son and her son.

"Q. What was the conversation? A. Well, nothing. He just saw Fred going along. Fred worked on the train.

"Q. Fred was brakeman? A. Yes, he had just happened to see him go along, and he was always twitting me about my boy, because he thought he wasn't as good as his boy, and I said, 'It may be Fred has made a man of himself' and I said, 'Clyde hasn't just done it.' We were always twitting each other about the boys."

Another witness testified:

"Q. In any of those conversations did Jim Ellis speak of Fred Gardner as being his son? A. Well, I have heard him on several occasions speaking of his boy Fred; several times."

Yet another witness, the husband of defendant's mother, deposed:

"I have personal knowledge of the matters herein stated; that in the year 1892 and for several years prior to and after said time . . . that at about the same time, and on several occasions the said James T. Ellis stated to me and in my presence that Frederick Bruce Gardner was his son."

Considering all the circumstances, the parties' station in life in that small community, the various conversations of Ellis touching defendant as his son, his several distinct admissions testified to as quoted above, this court has no hesitancy in holding that the trial court's finding of general and notorious recognition was sufficiently established to sustain the judgment.

But plaintiff has another grievance. In his pleadings, plaintiff alleged that he had purchased the property in dispute for $250 and that he had built a blacksmith shop upon it at a further cost of labor and materials amounting to $600. His proof showed an outlay for some such improvements: carpenter work $56, labor $21, roofing $50, other lumber and stuff $276.59—an apparent total of $403.59. Plaintiff claims a right to payment for these improvements before he can be dispossessed. This point is well taken. The evidence tended to show that the value of the property had been enhanced. (*Adams v. Kells,* 79 Kan. 564, 100 Pac. 506.) Defendant's answer admitted that "the plaintiff has made some improvements upon the real estate, the exact nature this defendant is unable to state." We think that under the statute (Gen. Stat. 1915, § 7530 *et seq.*), and also under general principles of equity (*Mercer v. Justice,* 63 Kan. 225, syl. ¶ 2, 65 Pac. 219), the plaintiff is entitled

to compensation for the augmented value given to the property by the improvements he has placed thereon.

It follows that the adjudication of title in favor of defendant should be affirmed; but that the portion of the judgment which awards to defendant the right to immediate possession should be reversed, and the cause should be remanded with instructions to determine what value has been added to the property by reason of the improvements made by plaintiff, and to give plaintiff a lien therefor, with the further provision that plaintiff be not disturbed in his possession until such lien is satisfied.

It is so ordered.