THE FIRST NATIONAL BANK OF LINCOLN, NEBRASKA, v. ELIAS DUNCAN.

No. 16,030.

SYLLABUS BY THE COURT.

1. RES JUDICATA — *Demurrer to Petition — Action Dismissed without Prejudice.* Where a demurrer to a petition is sustained, and the case is thereupon dismissed without prejudice at the request of the plaintiff, a theory of the law advanced by counsel for the defendant on the argument is not conclusive upon him in a subsequent action on the same matter between the same parties.

2. ESTOPPEL—*Admissions.* Where a litigant, as a part of his cause of action or defense, asserts that he is indebted to a third person, not a party to the litigation, such assertion is not conclusive upon him when subsequently sued by such person.

Error from Sheridan district court; CHARLES W. SMITH, judge. Opinion filed May 8, 1909. Affirmed.

*E. R. Sloan, Hall, Woods & Pound,* and *R. H. Smith,* for the plaintiff in error.

*R. B. Chambers,* and *Burch & Litowich,* for the defendant in error.

The opinion of the court was delivered by

MASON, J.: Elias Duncan executed two promissory notes, one payable June 1, 1905, the other June 1, 1906, secured by a real-estate mortgage which contained a clause providing that a failure to pay the first note promptly should render the other at once due. The first note was not paid at maturity. The First National Bank of Lincoln, Nebraska, purchased the second note between June 1, 1905, and June 1, 1906, and after the latter date brought action upon it, and, having failed to recover, now prosecutes error. Duncan pleaded matters constituting a sufficient defense against the original payee, and maintained that the bank stood on no better footing, because it had acquired the second note after it had matured, by virtue of the accelerating clause, through the non-payment of the first note. For present purposes this may be treated as the only issue that was tried, and the only question here presented is whether the pleadings filed or tendered by the bank alleged facts sufficient to preclude Duncan from denying its right to claim as an innocent purchaser.

The court refused to allow the bank to amend its reply during the trial by adding allegations the substance of which may be thus stated: On October 25, 1905, the original payee sued Duncan on the first note, asking also a foreclosure of the mortgage. The bank intervened in the action and filed a cross-petition asking a recovery on the note held by it. Duncan demurred to the cross-petition on two grounds, namely, that the bank had no capacity to sue, and that sufficient facts were not stated to constitute a cause of action. At the hearing on the demurrer Duncan's counsel argued that the note sued on by the bank was not due because the bank could not take advantage of the accelerating clause of the mortgage. The court sustained the demurrer without indicating upon what ground the

ruling was based. The bank then asked an order, which was granted, dismissing the cross-petition without prejudice to a future action.

Apart from any question of discretion, no error was committed in refusing to allow the amendment, for the reason that its allegations were immaterial. They were offered on the theory that they showed that Duncan in previous litigation with the bank had derived an advantage from taking the position that the second note had not been matured in June, 1905, by the non-payment of the first note, the argument being that he could not thereafter assert that the second note did become due at that time. The argument fails at several points. The allegations of the proffered amendment merely amount to this: that in the course of an argument in the earlier case an attorney for Duncan expressed the opinion that the bank could not avail itself of the accelerating clause of the mortgage—a pure question of law. This is not enough in itself to estop Duncan from maintaining that the bank, having received the second note after a default in the payment of the first, was not a purchaser before maturity. (*Light Co. v. Waller,* 65 Kan. 514.) And it receives no aid from the other averments. No advantage is shown to have resulted to his client from the suggestion of the attorney. Nothing in the proposed amendment indicated that the demurrer was sustained on the theory so presented, or why it was sustained. Moreover, the ruling culminated in nothing. No judgment was rendered upon it. The case having been dismissed without prejudice, the bank could at any time have begun a new action, in which it could have required the court to consider again every question presented—there was no adjudication against it at any point. Under the circumstances, the dismissal having been permitted, the ruling on the demurrer was of no more effect than an expression by the court

of an opinion upon an abstract question—an intimation of the kind of judgment it would be likely to render on the matter argued should occasion therefor arise. The sustaining of the demurrer having been announced the court might have refused to allow a dismissal and have entered a final judgment against the bank. (*Pugsley v. Railway Co.*, 69 Kan. 599.) In exercising its discretion in favor of permitting the case to be disposed of without a final judgment it in effect vacated the ruling on the demurrer, and left the parties exactly where they were before the action was begun.

The court also sustained a demurrer to a portion of the bank's reply of which the following is the substance: In the action already referred to, brought by the original payee on the first note, the petition alleged that the second note had been transferred to the bank before maturity. Duncan in his answer alleged that he had been damaged by breach of warranty and by fraud and deceit in connection with the transaction in which the notes were given. During the trial his attorneys, to enhance his damages, stated that the bank had bought the note before maturity, and argued to the jury that for that reason he would have to pay it. The court instructed the jury that the bank was an innocent holder of the note.

These facts are relied upon as precluding Duncan from disputing the bank's claim to be an innocent holder of the note, both because the matter had been already adjudicated and on the ground of equitable estoppel. Neither phase of the contention is sound. The doctrine of *res judicata* can not apply, for the parties were not the same in the two actions. Although the bank intervened in the first action, it afterward voluntarily withdrew from it. No principle of equity forbade Duncan to deny in the action brought by the bank what he had asserted in that brought by

the original payee, to which it was not a party. No estoppel against Duncan can arise in favor of the bank on account of his conduct toward the payee by which it was not affected.

"If a record or judicial proceeding contains material declarations or admissions of a party to the same, it may be offered in evidence in behalf of one who was not a party, but it will not be conclusive against the party who made the declarations or admissions." (*Murphy v. Hindman,* 58 Kan. 184, syllabus.)

(A number of cases to the same effect are collected in notes in 16 Cyc. 1050, to which may be added *Limerick v. Lee,* 17 Okla. 165; *Commonwealth, Appellant, v. Monongahela Co.,* 216 Pa. St. 108.)

In volume 2 of Wigmore on Evidence, section 1065, it is said:

"The moment we leave the sphere of the same cause, we leave behind all questions of judicial admissions. A judicial admission is a waiver of proof (*ante,* sec. 1057) ; and a pleading is, for the purpose of the very cause itself, a defining of the lines of controversy and a waiver of proof on all matters outside these lines of dispute. But this effect ceases with that litigation itself; and when we arrive at other litigation and seek to resort to the parties' statements as embodied in the pleadings of prior litigations we resort to them merely as *quasi*-admissions, *i. e.,* ordinary statements, which now appear to tell against the party who then made them."

The principle involved was thus stated in *Carradine et al. v. Carradine,* 33 Miss. 698 :

"Admissions made in the progress of a suit, as a substitute for proof of any material fact, or by pleading, and setting forth particular facts as grounds of complaint or of defense, amount in law to estoppels; but they are only so as to the parties to the suit; and in the same suit in which they are made. It would be contrary to all principle to hold a party absolutely concluded by allegations which he had seen fit to make, or

by grounds of defense which he thought fit to set up, in one suit, when he was afterward sued by another party in an action involving the same matter.    Such allegations or admissions are made with reference to the particular suit, and can not operate as estoppels beyond it, because as to strangers · to it there is no privity or mutuality, and as their rights are wholly unaffected by such allegations, admissions, or defenses, so must his rights, as against them, not be concluded thereby.    It is a common thing for parties sued for the recovery of property to plead property in a stranger, and rely upon that as a defense, and successfully; but it was never heard of that the stranger brought his action against the defendant founded on that evidence alone, and the defendant was held to be estopped by it."    (Page 733.)

The judgment is affirmed.