LEON E. WELCH, *Appellee*, v. WILLIAM MCINTOSH
et al., *Appellants,* and JAMES C. ELVIN et al., *Appellees.*

No. 17,847.

SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Real Estate—Resale by Purchaser—Specific Performance of Both Contracts.* One having a written contract for the purchase of real estate with a person having a similar contract for its purchase from the owner may maintain an action against the owner, and the person with whom he contracted, for the specific performance of both contracts.

2. ――――― *Subsequent Oral Modification of Contract—Statute of Frauds.* One who agrees in writing to convey real estate, for a payment to be made partly by a mortgage and partly in cash, and who afterwards orally consents to accept and does accept in lieu thereof a mortgage and money for an equal total, but in different proportions, can not defeat an action for the specific performance of the contract on the ground that the subsequent arrangement amounted to an attempt to make an oral modification of a contract required by the statute of frauds to be in writing.

3. ――――― *Oral Modification—Substantial Compliance with Written Contract.* Under the evidence in this case an agreement to deliver a second mortgage in part payment of real estate is held to have been substantially complied with by the delivery of one which was subject to three other mortgages, their total amount being that for which the parties knew the property to be incumbered.

Appeal from Harper district court. Opinion filed. March 8, 1913. Affirmed.

*W. W. Schwinn,* of Wellington, for the appellants.

*Andrew G. Washbon,* of Harper, for appellee Leon. E. Welch.

The opinion of the court was delivered by

MASON, J.: William McIntosh entered into a written contract agreeing to sell certain city lots to James C. Elvin. On the same day Elvin signed an agreement to convey them to Leon E. Welch. Elvin and Welch had no

disagreement between themselves, but McIntosh refused to make a deed. Welch then brought an action against McIntosh, making Elvin a party, asking for the specific performance of both contracts. Judgment was rendered for the plaintiff, and McIntosh appeals.

McIntosh objects to the decree of specific performance upon the ground that he had no contract whatever with Welch, but only with Elvin. There was no element of personal trust in the contract between McIntosh and Elvin. If Elvin had been acting for Welch, Welch could have enforced the contract, although McIntosh knew nothing of his connection with the matter. (*Hawkins v. Windhorst*, 87 Kan. 176, 123 Pac. 761.) There was nothing to prevent Elvin from assigning to Welch his rights acquired under his contract with McIntosh (39 Cyc. 1665), and his agreement to sell to Welch the lots he had contracted to buy from McIntosh was in effect such an assignment.

A further objection is based upon these facts: By the terms of the contract he had signed, McIntosh was to receive for the lots a second mortgage for $900 upon a certain tract of land, or, at the option of the purchaser, either $425 in cash and a mortgage for $425, or $800 in cash. There was evidence in behalf of the plaintiff to the effect that McIntosh afterwards orally agreed to accept $300 in cash and a mortgage for $700, and that a check for that amount, and such a mortgage, were then given him, he agreeing to make a deed to Welch, if upon examination he found no more against the mortgaged property than had been represented to him. McIntosh contends that in view of this situation the present action amounts to an effort to show that a written contract for the sale of real estate was amended by an oral agreement, and to enforce the contract as so amended. The statute which renders nonenforceable an oral contract for the sale of land prevents as well the enforcement of an oral agreement for the modification

of a written contract on that subject. (29 A. & E.
Encycl. of L. 824; 20 Cyc. 287; Note, 56 Am. St. Rep.
671; Note, 4 L. R. A., n. s., 980.) While not contro-
verting this general rule, a number of courts have
recognized what may be called the doctrine of substi-
tuted performance; that is, that "parol evidence is ad-
missible to prove a substitute agreement of the per-
formance of an original written contract when such
performance is completed." (Smith on the Law of
Fraud, § 369; 29 A. & E. Encycl. of L. 825, 826; *Lee v.
Hawks,* 68 Miss. 669, 9 South. 328, 13 L. R. A. 633;
*Neppach v. Or. & Cal. R. R. Co.,* 46 Ore. 374, 80 Pac.
482; *Alston v. Connell,* 140 N. C. 485, 53 S. E. 292.)

(See, also, cases cited at conclusion of note, 4 L. R.
A., n. s., 981.)

The written agreement bound McIntosh to convey
the lots for a mortgage for $900, or for $800 in cash,
or for $850, half in cash and half in a mortgage. Of
course he could not in the first instance have been re-
quired to accept $300 in cash and a mortgage for $700.
But after having orally agreed to do so, and having
received without objection the check and mortgage, he
can not put the buyer in default, and refuse perform-
ance on his own part, by urging that the terms of the
original agreement have not been kept. The case is
within the principle heretofore applied by this court,
indicated by the following quotations:

"The contract did not specify the securities to be
taken, and the parties could supplement it orally in this
respect. The remainder of the oral negotiations did
not create a new contract of sale supplanting the old,
and in any event the defendants will not be allowed to
agree upon a method of performance, induce the plain-
tiff to act accordingly, and then work a gross fraud by
repudiating altogether." (*Painter v. Fletcher,* 81 Kan.
195, 196, 105 Pac. 500.)

"The furnishing of an abstract or other like condi-
tion may be waived; and when waived, as in this case,

4—89 KAN.

the appellant could only put appellee in default by a performance or offer of performance on his own part. He can not induce appellee to desist from action, and then treat the inaction as a default and a basis of recovery." (*Hull v. Allen*, 84 Kan. 207, 209, 113 Pac. 1050.)

Another objection to the decree is made on the ground that the contract called for a second mortgage, while there were already three mortgages on the land, so that the plaintiff could only give him a fourth mortgage instead of a second. There was evidence that he received the mortgage offered him, knowing of the three prior mortgages, saying that he would accept it if he found nothing more on record ahead of it. Within the principle just stated, this was a sufficient performance on the part of the buyer, even if originally the seller might have made a point as to the number of separate mortgages ahead of his own, irrespective of the total lien represented. However, the evidence seems to show a mutual purpose to treat the phrase "second mortgage" as having reference to a mortgage subject to a prior indebtedness, without regard to its form. No objection was made to the total amount of the prior liens. Under these circumstances the fact that the existing incumbrance was distributed between three mortgages, instead of being combined in one, is not a ground for defeating the specific performance of the contract.

The contract between McIntosh and Elvin included a provision that the "securities"—that is, the mortgage given in payment—should be satisfactory to the former. This did not authorize an arbitrary rejection of the mortgage delivered. The only objections made to it are found to be untenable.

The judgment is affirmed.