No. 34,174

VERA MAE BETTS, *Appellant,* v. ELIZABETH GILBERT, Administratrix of the Estate of Samuel Gilbert, Sr., Deceased, *Appellee.*

(87 P. 2d 637)

Opinion filed March 4, 1939.

G. W. Sawyer, of Liberal, and E. F. Ireland, of Hooker, Okla., for the appellant.

G. L. Light and Auburn G. Light, both of Liberal, for the appellee.

The opinion of the court was delivered by

THIELE, J.: Vera Mae Betts filed an application in the probate court to be declared an heir of Samuel Gilbert, Sr., deceased. That court denied her application and she appealed to the district court and, after a hearing there, her application was again denied and she appeals to this court.

Samuel Gilbert, Sr., a resident of Seward county, died intestate April 16, 1935, leaving as one of his heirs his son, Melbourne Samuel

Gilbert, who seems to have been known as Samuel Gilbert, Jr. The son died December 20, 1937. In connection with the settlement of the father's estate, Vera Mae Betts filed an application, which is summarized: Applicant was born August 12, 1912; her mother was Alsinda May Greathouse, the wife of Amos Greathouse, who died October 17, 1911; that her father was Samuel Gilbert, Jr., who was an heir of his father, Samuel Gilbert, Sr.; that she was entitled to be adjudged as sole heir of her father, Samuel Gilbert, Jr., and an heir of Samuel Gilbert, Sr.; that during her childhood she was known as Vera Mae Gilbert; that when a small child she was taken by her father and his wife and lived with them until her marriage on January 4, 1928; that Samuel Gilbert, Jr., recognized and acknowledged her as his child, maintained and educated her and supported her until her marriage, and that it was generally and notoriously known in the community that she was his child. After a full hearing in the district court, her application was denied. In her appeal here, four questions are presented: (1) The trial court erred in the admission of certain evidence. (2) The judgment is contrary to the evidence. (3) The judgment is contrary to law, and (4) the trial court erred in denying the motion for a new trial. It may be observed that, however presented, the real question is the right of an illegitimate child to inherit from its father and how that right may be established.

Our statute provides that an illegitimate child inherits from its mother. The next following section, G. S. 1935, 22-122, is as follows:

"They shall also inherit from the father whenever they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing."

In this case there is no claim that the putative or claimed father ever in writing acknowledged his paternity. The question is whether she was his child and he ever recognized her as his child, the recognition being general and notorious. Whether there had been such recognition was a question of fact for the trial court. (See *McLean v. McLean*, 92 Kan. 326, 140 Pac. 847; *Arndt v. Arndt*, 101 Kan. 497, 167 Pac. 1055; *Brooks v. Fellows*, 106 Kan. 102, 185 Pac. 985; *Weber v. Gardner*, 110 Kan. 295, 203 Pac. 705, and the cases cited therein.)

The putative father was generally referred to by the witnesses as Sam Gilbert or as Gilbert and the names are so used hereafter. Appellant's evidence in part consisted of her birth certificate showing

she was born August 12, 1912, that she was illegitimate; that her father was unknown, and that her mother was married to a man named Greathouse; also the certificate of death of Greathouse showing he died October 17, 1911, aged 82 years plus; and also marriage certificate of herself and E. D. Betts. In addition, the following was shown: A doctor testified with reference to the period of gestation as being nine months. Mae Skinner testified she was married to and lived with Sam Gilbert as husband and wife during November, 1911; that Gilbert was gone for three days during November and told her he was caught in a snowstorm and was forced to stay at the Greathouse place. About the time applicant was born, he told witness he would have to support the child, and later told her he wanted his child with them, that its mother was not a fit person to raise it; in 1914 or 1915 they got the child and took it home with them, and the child continued to live with witness after her divorce from Gilbert, and until the child was married; that the reason she took the child was:

"The law at Hugoton came after him and he said he would stay in jail or die before he would pay her mother alimony."

On cross-examination, it appeared she did not know much about the matter. In this connection, it may be noted there was no testimony there were any legal proceedings of any kind against Sam Gilbert in respect to the appellant, her parentage, her support, etc. She also testified that on certain occasions Gilbert inquired about the child, saying: "How is my baby?" "Take good care of my baby." She never told the elder Mr. and Mrs. Gilbert that Sam was the father of Vera Mae, as she thought they knew it. A former school teacher stated Vera Mae went to school to her, she never suspected her parentage would be questioned; the child was known as Vera Gilbert. A former schoolmate testified she went to school with appellant, and had been in the Gilbert home and they treated her as their own child, and that Sam referred to her as "my babe," and that she was generally known as Vera Mae Gilbert. It was stipulated certain other persons would testify to the same effect. Louis Shinn, as shown in appellant's abstract, testified that Sam Gilbert had been at his shop with Vera Mae and said she was his girl. As shown in the counter abstract, the question and answer were:

"Q. Did you ever hear him (meaning Melbourne Samuel Gilbert) make any reference to Vera Mae? A. Yes, I have; not any more than she was an adopted child, but not whether she was his, or whose she was."

In opposition to the above showing, the respondents offered testimony tending to show that in 1911 Sam Gilbert was employed driving a milk wagon; that in July he was married and with his wife lived with his parents until the next spring; that he was away two or three weeks at the time of his marriage, but was at work every day during October, November and December of 1911. A Mr. Rapp testified that he had lived in the community for many years, and had been township trustee for seventeen or eighteen years, knew the Greathouse family prior to claimant's birth and knew the Gilberts; that Sam Gilbert introduced his wife to witness just before their marriage; that witness knew of the occasion when they took the little girl to raise.

"I asked him if he was taking one to raise and he says, 'Yes, my wife was all alone and she wanted someone to keep her company.'"

His testimony is further abstracted:

"I have been well acquainted in that country throughout all these years; haven't at any time ever heard or understood that it was ever claimed by any person whatsoever that Sam Gilbert was the father of Vera Mae Greathouse; did not know that such a claim was ever made until she filed this proceeding in the probate court; that was after Sam, the purported father of the child, had died."

In addition, respondent showed the divorce proceedings in the case of May S. Gilbert (May Skinner) against Sam Gilbert. She had charged him with gross neglect of duty and habitual drunkenness. In a cross petition he had charged her with gross neglect of duty. The only significant thing in this cross petition is Sam Gilbert refers to the appellant here as "the child which they raised," and that the plaintiff in the divorce action wanted to claim the child as her own and endeavored to have a birth certificate issued for it. As to the evidence above noted, no complaint is made, but appellant does complain of the following: Respondent offered the records and files in an action tried in the district court of Stevens county, showing in 1935 one Charles E. Dudley brought an action to partition real estate owned by Amos Greathouse at the time of his death; that plaintiff had acquired the interest of Alsinda May Greathouse Smith, and that other persons, including Vera M. Greathouse Betts, claimed to be owners. In an answer and cross petition filed by Vera M. Greathouse Betts, her husband and her brother, she admitted that Amos Greathouse died and left surviving as his heirs certain named persons, including herself, and under further allegation she claimed to own one-fourth of the property. Under another cause of

action she asked for an accounting for rents. This answer and cross petition were verified by counsel, but attached thereto was a written request signed by Mrs. Betts personally directed to plaintiff asking for an itemized statement of rents since September 2, 1916. Thereafter, on November 6, 1935, a judgment was entered that Vera M. Greathouse Betts was the posthumous daughter of Amos Greathouse, etc.; that in the interim she and others had conveyed to plaintiff and his title was quieted. At some later date, not disclosed by the abstract, a motion was filed by Vera Mae Betts to have the judgment amended by striking from her name the word "Greathouse," and also the finding she was the daughter of Amos Greathouse, for the reason that she was not his daughter but the daughter of Alsinda May Greathouse, and the error was occasioned by mistake of her attorney. The motion specifically stated the modification sought should in nowise affect plaintiff's title. This motion was denied.

Appellant contends that because the above answer and cross petition were not signed by her individually that the admissions by the pleadings and the findings in the judgment cannot be used against her in another and different action by one not a party to the first action. Appellee, as we understand, did not in the trial court, and does not here contend that the admissions made in the pleadings and the findings of the judgment now estop appellant or are conclusive against her, but only that the pleadings and judgment are admissible in evidence for what they are worth. Appellant recognizes that is the rule in Kansas. (See *Bank v. Duncan,* 80 Kan. 196, 101 Pac. 992; *Watt v. Railway Co.,* 82 Kan. 458, 108 Pac. 811; *Every v. Rains,* 84 Kan. 560, 115 Pac. 114; *Kington v. Ewart,* 100 Kan. 49, 164 Pac. 141.) The rule being such, it is useless to discuss authorities from other jurisdictions where a contrary conclusion was reached. It may further be noticed that although the answer and cross petition were signed by counsel, and for that reason not entitled to the same weight as though signed individually by appellant, it does appear that she personally signed the request for the accounting, and that she obtained the benefits of the sale of her claimed interest. The weight to be attached to all was for the trial court, which did not err in admitting the record as evidence.

It has been noted above that under our decisions the question whether an illegitimate child is the child of the putative father, and has been recognized by him as his child, and whether the recog-

nition has been general and notorious is a question of fact. Conceding for the moment the evidence would have warranted a judgment in appellant's favor, may it be said that a judgment against her was contrary to the evidence? We think not. It is not disclosed where the information came from on which the certificate of birth was based, but it showed appellant's father to be unknown. The only evidence Sam Gilbert was her father was based on the statements of Sam Gilbert's divorced wife that he had admitted as much to her, but her evidence as to his being with appellant's mother for three days about the time conception would ordinarily have occurred was rather positively denied by three or four other witnesses. There was little or no evidence of general and notorious recognition. What Gilbert may have said to his wife, and his manner of reference to appellant in her presence is not sufficient. While it is undisputed appellant was known as Vera Mae Gilbert, at least some people believed she was a child the Gilberts had taken to raise. One witness referred to her as an adopted child, and in the divorce proceedings Gilbert himself referred to her in a manner denying paternity. It may be conceded that not much weight should be given Gilbert's declaration in his own interest. But without reviewing the record further, it may not be said that it compelled any judgment for appellant.

A reference to what has been said, when considered in view of our decisions above noted, disposes of appellant's contention the judgment is contrary to law.

And finally, appellant contends the trial court erred in denying her motion for a new trial, which set forth substantially all of the grounds enumerated in the statute save the sixth. (See G. S. 1935, 60-3001.) We have covered such matters as are argued except newly discovered evidence. That consisted solely of an affidavit of Alsinda May Greathouse giving her version of the birth of the child, the occasion of its conception and stating that its father was Sam Gilbert, Jr., also known as M. S. Gilbert. There was no showing whatever that with reasonable diligence appellant could not have produced her as a witness at the trial, in fact, the affidavit states that the affiant is a resident of Seward county, where the cause was tried. In the absence of a proper showing, the trial court should not grant a new trial.

A review of the entire record does not disclose the trial court erred, and its judgment is affirmed.