S. H. RENO et al., Appellants,

v.

Ralph G. BECKETT and Elizabeth G. Beckett, husband and wife, Appellees.

No. 75–1496.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 23, 1976.

Decided March 14, 1977.

John Anderson, Jr., Anderson, Granger, Nagels & Lastelic, Overland Park, Kan., for appellants.

J. D. Lysaught, Weeks, Thomas, Lysaught, Bingham & Mustain, Overland Park, Kan., for appellees.

Before LEWIS, Chief Judge, SETH, Circuit Judge, and MORRIS, Chief Judge.*

MORRIS, Chief Judge.

Appellants seek review of a judgment denying them as buyers specific performance of a contract for the sale of real estate. At oral argument appellants stated that they did not dispute the findings of fact announced by the trial court and neither are those findings of fact disputed in their briefs. Except for omitting the land

* Honorable Joseph W. Morris, United States District Judge for the Eastern District of Oklahoma.

description and certain exhibits referred to, those findings are substantially as follows:

1. This controversy involves a written agreement wherein appellees agreed to sell to appellants, a group of people operating as I–435 Land Company, the following tract of real estate in Johnson County, Kansas: [The 20 acre tract was described].

2. The history of facts and circumstances relevant to the present action dates back to 1966 when Ralph Beckett and his wife, Elizabeth Beckett, entered into a previous written agreement to sell the above described 20 acre tract to Trail Realty, Inc. This agreement required a down payment of $5,000 and a second payment of $53,000 was to be made by December 31, 1967 [sic]. A final payment of $142,000 was required by January 31, 1967. The contract provided that time was of the essence, but a five-day grace period was allowed following each payment date.

3. During the fall of 1966, C. A. Jones, a licensed real estate agent and broker with the J. C. Nichols Company, learned of the Trail Realty agreement. Jones had managed property for the Becketts, including the twenty-acre tract in question, securing tenants, making leases, planning crops, and collecting rents. Jones was a friend and client of John W. Breyfogle, Jr., Ralph Beckett's attorney. In late 1966 Jones heard that the Trail Realty contract might fail. At a chance meeting between Jones and George W. Gagel (one of appellants), Jones told Gagel the property might be for sale and Gagel informed Jones he might be interested in purchasing it. By letter dated January 19, 1967, Jones advised Beckett that he had heard rumors that Trail Realty was having difficulty obtaining financing and indicated that he had some responsible people who would be interested in the property and would be in a position to pay cash.

4. Trail Realty was, in fact, having difficulty obtaining the necessary financing. The deadline for payment was extended several times by mutual agreement, and finally Trail Realty was given until April 1, 1967, at which time the entire purchase price was due. Trail Realty, unable to obtain financing, failed to tender payment by April 1, 1967, or within the five-day grace period thereafter, and the Becketts refused to further extend the agreement.

5. In March of 1967, Breyfogle, Ralph Beckett's attorney, advised Jones of the April 1, 1967 deadline for payment by Trail Realty, and indicated that Trail Realty probably would not be able to perform. Jones told Breyfogle that he would contact his people and see if they were interested.

6. Shortly after April 1, 1967, Breyfogle advised Jones that Trail Realty had not performed and the property was available for another buyer. Jones immediately took steps to arrange for purchase of the property by I–435 Land Company. A written agreement was prepared by the J. C. Nichols Company and submitted to Gagel for his signature. Gagel, on behalf of the I–435 Land Company, signed the agreement and gave a check for $10,000 as earnest money. The $10,000 was deposited with the J. C. Nichols Company, Jones' employer. Jones then took the signed instrument to Breyfogle, who in turn forwarded it to the Becketts in Florida. Elizabeth Beckett signed this agreement on April 6, 1967, and Ralph Beckett signed it on April 7, 1967. The instrument itself is dated April 4, 1967.

7. At the time of the trial in this matter, the $10,000 remained on deposit with the J. C. Nichols Company.

8. The agreement between the Becketts, as sellers, and I–435 Land Company, as buyers, contains the following provisions relating to title defects and title insurance:

7. The seller shall, within twenty (20) days from the date hereof, deliver to the buyer or for the buyer at the office of J. C. Nichols Company an abstract of title by competent abstractors. . . . If there are objections to the title, the buyer shall specify the objections in writing, to be delivered to the office of J. C. Nichols Company. The seller shall have any defects in the title corrected and shown on the abstract within thirty (30) days from date of delivery of such objections. . .

8. In lieu of furnishing such abstract of title, or in lieu of correcting such objections, the seller may furnish the buyer an Owner's Title Insurance Policy in the amount of the purchase price from a company authorized to insure titles in this state, insuring a merchantable fee simple title to said property in the buyer as of the date of recording the deed. The seller may, within twenty (20) days from the date hereof or the date of receipt of objections to said title, deliver to the buyer or for the buyer at the office of J. C. Nichols Company a commitment for said policy. The seller shall have an additional thirty (30) days to make any required corrections in the title. In case such defects in title cannot be rectified or the title insurance commitment is not delivered within the time specified, this contract shall be null and void, unless the buyer elects to waive such objections, and the money deposited aforesaid shall be returned to the buyer and the abstract returned to the seller.

9. Paragraph eleven of the agreement provides, in relevant part, that: "Time is of the essence of this contract."

10. Appellants desired title insurance and a title insurance policy was requested by letter from Breyfogle to Sam McCaffree of the Columbian Title and Trust Company. Breyfogle also furnished the title insurance company with an abstract of title on the subject property. On April 26, 1967, before title insurance could be secured, Trail Realty filed an action for specific performance of its contract with the Becketts and an order of attachment was issued the same day. A copy of the order of attachment was filed with the Register of Deeds of Johnson County, Kansas, on April 28, 1967. The title insurance company refused to issue a policy on the subject property until the attachment was released. The order of attachment was not vacated until April 9, 1971, when the trial court ruled that Trail Realty was not entitled to specific performance of its contract.

11. On May 3, 1967, five days after the attachment was filed, Breyfogle wrote Ralph Beckett, with a copy of the letter sent to Jones, advising Beckett concerning the Trail Realty action as follows:

[T]he suit does cloud the title and make it impossible for you to deliver merchantable title until disposed of. The question thus arises as to what position George Gagel may elect to take under these circumstances so I am sending Chuck Jones copies of the above instruments [the pleadings and order of attachment in the *Trail Realty* case] for his information and that he may advise Mr. Gagel.

12. On May 5, 1967, Jones wrote, in response to Breyfogle's letter:

I received your letter this morning together with copy of the action *Trail Realty v. Beckett.* I have talked to Mr. Gagel and his statement was that we have contracted to buy the property and want the property and expect to get the property. He informed me that he is mailing a check to Sam McCaffree in the amount of $190,000.00, the balance of the purchase price under their contract with instructions to deliver it when Mr. McCaffree can issue an owner's title policy on the property in question.

13. Also, on May 5, 1967, Gagel sent the $190,000 to McCaffree with a letter directing McCaffree to hold the money subject to the following conditions:

[T]his money is to be held in escrow until the Becketts are able to complete their portion of the contract, namely:

1. Provide a satisfactory and clear title to the property.
2. Provide and have issued a title insurance policy on the property.
3. Provide the proper Deed and other instruments to conclude the contract.

When the transaction can be properly closed you will, of course, hand this payment over to either the Becketts or their attorney, Mr. John W. Breyfogle, Jr.

14. As Gagel testified at the trial of this matter, he and I–435 Land Company never indicated any intention, and in fact were never willing to waive the title defect created by the Trail Realty action.

15. Of the $190,000, appellants borrowed $125,000 from the Commercial National Bank and appellants individually contributed the remainder. The title insurance company placed the $190,000 in a non-interest bearing account at the Valley View State Bank. Appellants were officers and directors and owned substantial portions of stock in the Valley View State Bank. At appellants' request, some $137,000 was withdrawn from the account in October of 1969 to repay appellants' loan at the Commercial National Bank. Appellants paid a total of $17,321.84 in interest on the borrowed money. At the time of trial, the remainder of the $190,000 was still in the title insurance company's account at the Valley View State Bank.

16. Some time after the filing of the *Trail Realty* action, Jones saw and talked with appellant S. H. Reno in a social meeting at the Saddle and Sirloin Club. Jones told S. H. Reno that a problem had arisen but that it soon would be cleared up and the deed would be delivered. S. H. Reno was not aware of the *Trail Realty* litigation at the time of this conversation.

17. In June of 1968, Beckett asked Breyfogle to obtain a letter from Jones regarding the Becketts' obligation to pay a real estate commission on the Gagel sale. The letter was given, which stated: "It is understood that only if, and when said contract is consummated will you be liable to me or the J. C. Nichols Company for a real estate commission."

18. In May of 1968 Beckett called on Gagel at his residence. In addition to general social conversation, Beckett suggested the possibility that Gagel might attempt to buy out Trail Realty so the contract with I–435 could be consummated. Gagel refused to do so. Beckett and Gagel met again at Gagel's office in January, 1970.

19. In the *Trail Realty* litigation the Becketts, through their attorneys, argued that they were obligated to sell the subject property to I–435 Land Company. The Becketts' attorneys advanced this argument as a ground or reason for denying specific performance of the Trail Realty contract.

20. Since early April, 1967, when appellants and appellees entered their written agreement concerning sale of the real estate, the property in question has appreciated in value so that it is now valued at approximately four times the original $200,000 contract price.

These findings were filed on October 31, 1974, and were amended on May 7, 1975.

The dispute thus comes to us in this context: Under a contract dated April 4, 1967, appellants were to buy and appellees were to sell twenty acres of land in Kansas. Before the closing time provided in the contract the property was attached as a result of other litigation, which ultimately also reached this court in the case of *Trail Realty, Inc. v. Beckett*, 462 F.2d 396 (10th Cir. 1972). After the conclusion of the *Trail Realty* suit appellees failed to perform the contract with appellants and this action was filed April 20, 1971. Trial to the court was held on November 12 and 13, 1973, and judgment was entered November 1, 1974. Appellants' motion for a new trial was denied on May 7, 1975. This appeal followed.

It is clear from the terms of the contract that appellees had 20 days from the date of the contract to deliver a commitment for title insurance and an additional 30 days to meet title requirements. It is uncontroverted that the commitment for title insurance could not be obtained because of the *Trail Realty* action. The title requirements were not waived by appellants. Neither were the title requirements met. The contract provides in part:

> In case such defects in title cannot be rectified or the title insurance commitment is not delivered within the time specified, this contract shall be null and void, . . .

Appellants seek to avoid the contract language contending on appeal that:

1. The Statute of Frauds does not apply to this case and the evidence shows a mutual intent to modify the contract so as to extend the time of performance until the conclusion of the *Trail Realty* litigation. Accordingly, appellees' refusal to perform

the contract upon the successful termination of the *Trail Realty* suit is redressable by this action for specific performance.

2. If the Statute of Frauds does apply to the modification urged, the Statute was satisfied by the exchange of letters described in the trial court's findings numbered 11, 12 and 13.

3. If the Statute of Frauds does apply, it is overcome by equitable considerations.

4. By their conduct, appellees waived the "this contract shall be null and void" language.

5. The doctrine of judicial estoppel applies to estop appellees.

*Whether the Statute of Frauds Applies*

Appellants argue that the only modification made in the contract was an extension of time for performance and that under Kansas law such modifications are enforceable even though they are not in writing. The trial court found and appellees here contend that the modification sought to be enforced was not simply a change in the time for performance of the contract but was a substantial modification of the kind which must be in writing under Kansas law.

Kansas law provides that:

No leases, estates or interests of, in or out of lands, exceeding one year in duration, shall at any time hereafter be assigned or granted, unless it be by deed or note, in writing, signed by the party so assigning or granting the same, or their agents thereunto lawfully authorized by writing, or by act and operation of law. . . . Kan.Stat. § 33–105.

and that

No action shall be brought whereby to charge a party . . . upon any contract for the sale of lands, tenements, or hereditaments, or any interest in or concerning them; . . . unless the agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized in writing. . . Kan.Stat. § 33–106.

It is not disputed that the original contract in this case was governed by this Statute of Frauds. It is also not disputed that, under Kansas law, when the original contract is within the Statute of Frauds, a modification of the contract cannot be enforced unless it, too, is in writing. *Riffel v. Dieter*, 159 Kan. 628, 157 P.2d 831 (1945). However, as the trial court noted, the Kansas court has recognized an exception to this rule as to certain insubstantial contract modifications which it has enforced even though the modification was not reduced to writing. *See Painter v. Fletcher*, 81 Kan. 195, 105 P. 500 (1909); *Welch v. McIntosh*, 89 Kan. 47, 130 P. 641 (1913); *Hughes v. Knapp*, 109 Kan. 183, 197 P. 862 (1921); *Comer v. Shoemaker*, 134 Kan. 605, 7 P.2d 500 (1932).

In all these cases the modification sought to be enforced involved a change in the form, but not, apparently, the value of consideration. In *Fletcher* there was also an oral agreement fixing a time and place for performance, but it is not clear whether this agreement altered the contract or merely supplemented it.

■ The only generally applicable test developed by these cases is that a modification is not substantial and need not be in writing when it "does not go to the substance of the contract" and "[does] not relate to any of those fundamental things which the statute requires shall be reduced to writing," but relates instead "merely to details of performance," *Hughes v. Knapp*, 109 Kan. 183, 197 P. 862, 863 (1921) or to "mode or time of performance." *Comer v. Shoemaker*, 134 Kan. 605, 7 P.2d 500, 501 (1932).

Noting the trial court's observation that this distinction is a "difficult one to draw," appellants contend that the trial court erred in finding that the modification sought to be established here was an extension of time for performance of the contract until the *Trail Realty* litigation was concluded. Appellants argue that such a modification is not substantial and need not be established by a writing.

The trial court found, and appellees here argue, that the modification sought to be effected would entail substantial changes in the original contract and so must be in writing. We agree.

At the heart of appellants' contention that the only change made was in the time for performance is an unarticulated premise that the modification is to be determined, not from the change which would be required in the words of the original contract, but from the nature of the result intended by the parties. And appellants would prove this intention by parol. Such a theory would defeat the purposes of the Statute of Frauds. It would permit a party to a written contract to enforce any oral modification of any magnitude merely by characterizing the modification as intending only a change in the time or mode of performance and offering parol evidence to prove the intention.

■ For purposes of determining whether a contract modification is so substantial that the Statute of Frauds applies, the court must consider, not the purported intent or result of the change, but the kind of alterations which would actually be required in the original contract to effect the modification urged. Paragraph 8 of the contract provides in part:

> The seller may, within twenty (20) days from the date hereof or the date of receipt of objections to said title, deliver to the buyer or for the buyer at the office of J. C. Nichols Company a commitment for said policy. The seller shall have an additional thirty (30) days to make any required corrections in the title. *In case such defects in title cannot be rectified or the title insurance commitment is not delivered within the time specified, this contract shall be null and void, unless the buyer elects to waive such objections, and the money deposited aforesaid shall be* returned to the buyer and the abstract returned to the seller. (Emphasis added).

Paragraph 11 of the contract provides in part:

> Time is of the essence of this contract.

When the *Trail Realty* action was filed and attachment issued, the parties were governed by paragraph eight of the contract. The buyers had requested title insurance and the sellers had sought to obtain same. Title insurance was refused because of the attachment in the *Trail Realty* suit. The order of attachment was filed on April 28, 1967. Under the contract, appellees had twenty days from the date of the contract to furnish a commitment for title insurance and thirty days thereafter to correct title defects. Under the absolving clause in the contract, the contract was to become null and void if the title insurance commitment could not be delivered or title defects could not be rectified within these time periods, unless the buyers elected to waive the title defects. The trial court found that the buyers elected *not* to waive the defect.

■ In order to reach the result urged by appellants, the absolving clause must be read out of the contract and the court must find that the elimination of the clause is so insubstantial a change in the contract that the Statute of Frauds does not apply to it. The court cannot so find. The absolving clause creates a significant right in the seller: the right to be absolved of any obligation under the contract if title problems cannot be resolved within a specified period of time. Furthermore, under this contract, the absolving clause is self-executing and so affects the very existence of the contract. Any contract modification which purports to extend the time in which the seller must correct title defects or which purports to relieve buyer of the obligation to accept the title with its defects, is a substantial modification of the contract.

Furthermore, as the trial court noted, the modification urged by appellants would require the court to find that the time for performance of the contract could be extended by oral agreement, despite the time-of-the-essence provision. Whether slight changes in the time provisions of such a contract could be made orally is not today at issue. Here we consider appellants' contention that the contract was extended for the time necessary to clear the title of the

*Trail Realty* attachment. This is a purported extension of more than four years. It is true, as appellants argue, that the parties could not have known in the spring of 1967 the duration of the *Trail Realty* litigation. However, this fact does not obviate the necessity for a writing. Comparing the modification urged here with those enforced in the Kansas cases discussed above, it is clear that this modification is a substantial one and is not exempt from the Statute of Frauds under the distinction developed in those cases as to insubstantial modifications.

In this connection, the court notes that the application of the distinction to the facts presented by this case poses a question undecided by Kansas law. This Circuit has repeatedly honored the rule that "Absent a showing that the trial judge's view of state law is clearly erroneous, the appellate court will defer to the trial judge, where the local courts have not ruled on the question." *Brennan v. University of Kansas,* 451 F.2d 1287, 1291 (10th Cir. 1971); *Wells v. Colorado College,* 478 F.2d 158 (10th Cir. 1973); *Binkley v. Manufacturers Life Ins. Co.,* 471 F.2d 889 (10th Cir.), *cert. denied,* 414 U.S. 877, 94 S.Ct. 130, 38 L.Ed.2d 122 (1973). We have also said that the determination of the resident federal judge "carries extraordinary persuasive force on appeal where there are no state decisions on point or none which provide a clear precedent." *DeBoer Construction, Inc. v. Reliance Insurance Co.,* 540 F.2d 486 (10th Cir. 1976); *Land v. Roper Corp.,* 531 F.2d 445, 448 (10th Cir. 1976); *Stevens v. Barnard,* 512 F.2d 876, 880 (10th Cir. 1975).[1]

Appellants further suggest that the modification should be given effect under the rule that the terms of a written contract may be varied, modified, waived, annulled or wholly set aside by a subsequently executed contract, whether such subsequently executed contract be in parol or in writing. *Fast v. Kahan,* 206 Kan. 682, 481 P.2d 958 (1971); *Welch v. McIntosh,* 89 Kan. 47, 130 P. 641 (1913). However, the facts as found

by the trial court do not show that there existed in this case any such subsequently executed contract. This contract remained executory.

Appellants also argue that any written contract may be modified by a subsequent oral agreement, but the cases cited for this proposition are not cases in which the original contract was within the Statute of Frauds. As to such contracts the Kansas court has said that

[i]t is also well settled upon unassailable grounds that if the original contract is required to be in writing in order to be enforceable, any substantial modification of the contract must likewise be in writing and signed by the party to be charged therewith. *Riffel v. Dieter,* 159 Kan. 628, 157 P.2d 831 (1945).

The modification urged by appellants is within the Statute of Frauds and may not be enforced unless the Statute is satisfied.

### *Whether the Statute of Frauds Was Satisfied*

Appellants contend that the contract was modified by a series of letters exchanged during the days immediately following the filing of the *Trail Realty* suit. They argue, first, that an exchange of letters is sufficient to satisfy the Kansas Statute of Frauds, and that this is true even if the letters are transmitted through an agent. They further assert that the letters set forth in the trial court's findings numbered 11, 12 and 13 modify the contract and constitute writings sufficient for the Statute of Frauds.

The letters do not modify the contract and do not satisfy the Statute of Frauds. Read together, the letters simply do not show an agreement to extend the time for performance of the contract or to eliminate the absolving clause or any other agreement with respect to the contract. Nor may appellees be charged with any of the writings relied upon by appellants, so that even if the writings be construed as estab-

---

1. For a discussion of these views see *Binkley, supra,* at 893 and *Land, supra,* at 448; cf. *Bishop v. Wood,* 426 U.S. 341, 346 n. 10, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).

lishing an agreement, such agreement may not be enforced against appellees.

■ Appellants rely on the letter dated May 3, 1967, from Breyfogle to appellee Ralph Beckett, a copy of which was sent to Jones; the letter from Jones to Breyfogle, dated May 5, 1967, a copy of which was sent to Gagel; and the letter from Gagel to Sam McCaffree of the Columbian Title and Trust Company, also dated May 5, 1967, a copy of which was sent to Jones. The letter from Breyfogle to Beckett merely informs Beckett of the filing of the *Trail Realty* suit and transmits the pleadings served on Breyfogle by the plaintiffs in that suit. The letter advises Beckett that the *Trail Realty* litigation clouds the title to the land under contract to appellants and raises a question "as to what position George Gagel may elect to take under these circumstances so I am sending Chuck Jones copies of the above instruments for his information and that he may advise Mr. Gagel."

The letter from Gagel to McCaffree instructs McCaffree to hold in escrow the enclosed check for $190,000 until such time as the Becketts furnish a clear title, a title insurance policy and a proper deed.

The letter from Jones to Breyfogle advises Breyfogle of the action taken by Gagel in depositing in escrow the check for the balance of the purchase price. The letter also advises Breyfogle that Jones "talked to Mr. Gagel and his statement was that we have contracted to buy the property and want the property and expect to get the property."

These writings, whether considered individually or together, do not establish a modification of the contract as argued by appellants. Appellants suggest that Breyfogle's reference to an "election" gave Gagel an option to modify the contract unilaterally, an option which Gagel exercised by his letter to McCaffree, transmitting the check for the balance of the purchase price. We agree with the conclusion of the trial court that appellants' interpretation stretches beyond reason the language of Breyfogle's letter. That letter does not give appellants carte blanche to change the contract as they wish. Indeed, it does not so much as invite, propose or suggest modification of the contract. It does not obligate appellees in any way and it does not constitute an offer to change the contract.

Accordingly, the Gagel letter to McCaffree cannot be construed as an acceptance. The Gagel letter is at most a unilateral, uninvited act. Even if it be construed as an offer to modify the contract, there is no writing in evidence which can be construed as an acceptance of any such offer. Certainly the Jones letter does not constitute an acceptance. There is no language in the Jones letter which can be construed as approving or assenting to the Gagel action or position. The Jones letter is purely a communication of information; it is devoid of contractual effect.

■ And even if the letters could be construed as an agreement to modify the contract, appellees could not be charged therewith. The Kansas Statute of Frauds provides that no action may be brought to enforce a contract for the sale of land unless such contract is in writing and signed by the party to be charged therewith, or one who has written authorization to sign on his behalf. Kan.Stat. § 33–106. Under Kansas law, when the original contract must be in writing, any substantial modification thereof is also governed by the Statute of Frauds. *Riffel v. Dieter*, 159 Kan. 628, 157 P.2d 831 (1945). Accordingly, the trial court held and we agree that any modification is unenforceable in the absence of evidence that the person signing the modification had written authorization from appellees. No such evidence was presented by appellants. The existence of the modification urged by appellants is not established by writings sufficient for the purposes of the Statute of Frauds.

Appellants next argue that the modification should be enforced because it was mutually assented to. In effect, appellants argue that evidence of mutual assent is sufficient to satisfy the Statute of Frauds. The argument is without merit.

The modification sought to be enforced here is governed by the Statute of Frauds and there was no compliance with the Statute. Accordingly, there was no modification of the contract and the contract, by its own terms, became null and void when the buyers failed to elect to waive the title defects and those defects were not cured or title insurance secured within the time limits specified in the contract.

### Whether the Doctrine of Equitable Estoppel Requires Enforcement of the Contract.

Appellants assert that the trial court failed to consider "all the facts and equitable principles applicable to specific performance action." In support of this contention appellants argue that extending the time for curing title defects was a commercially reasonable course of action and a viable option taken by the parties when confronted with the *Trail Realty* litigation.

The contract does not provide any such option. The only option available to appellants under the terms of the contract was either to let the contract expire by its own terms or to elect to take the title with the defects. The contract does not provide an option to extend the time for curing title defects. Any such option could be created only by modification of the contract and, for the reasons detailed above, no such modification has been demonstrated in this case.

Furthermore, appellants fail to show the court that the commercial reasonableness of a contract modification creates an estoppel or constitutes an equitable consideration requiring enforcement of a modification which does not comply with the Statute of Frauds. The commercial reasonableness of the modification sought to be enforced is irrelevant in this case. The contract could have provided for the contingency which arose but it did not.

Appellants next assert that
The doctrine of equitable estoppel should bar one who has conducted himself in a manner consistent with intended performance of the contract for more than four (4) years and then, when the title is cleared and can be conveyed, deny the contract and refuse to perform. (Appellants' Brief, pp. 26–27).

Appellants argue that the facts of the case are such that even if the Statute of Frauds applies, the doctrine of equitable estoppel operates to overcome the Statute. The trial court observed that in Kansas law the Statute of Frauds does not bar the application of equitable principles, citing *Kelling v. Brooks*, 128 Kan. 55, 275 P. 1077 (1929). However, the trial court further found that the elements of equitable estoppel do not exist in this case.

Appellants rely on the doctrine of equitable estoppel as enunciated by the Kansas court in *Gas Service Co. v. Consolidated Gas Utilities Corp.*, 145 Kan. 423, 65 P.2d 584 (1937). There the court said:

"That a person is held to a representation made or a position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all of the circumstances of the case, has, in good faith, relied thereon. Such an estoppel is founded on morality and justice." 65 P.2d at 592, citing 10 R.C.L. 689.

In a later case, the Kansas court offered these additional observations:

It is generally held that the doctrine should be interposed with caution; that a necessary element of equitable estoppel is that the party invoking it has changed his position to his detriment in reliance upon the promise of the other party. Also, that "where specific performance cannot be decreed, the same result cannot be accomplished under the doctrine of equitable estoppel." (citations omitted). *Riffel v. Dieter*, 159 Kan. 628, 157 P.2d 831, 840 (1945).

And in *Place v. Place*, 207 Kan. 734, 486 P.2d 1354 (1971) the Kansas court again enumerated the elements of equitable estoppel as follows:

(1) there must have been a false representation or concealment of material facts; (2) it must have been made with

knowledge, actual or constructive, of the facts; (3) the party to whom it was made must have been without knowledge or the means of knowing the real facts; (4) it must have been made with the intention that it should be acted upon; and (5) the party to whom it was made must have relied on or acted upon it to his prejudice. 486 P.2d at 1358–59, citing *Pelischek v. Voshell*, 181 Kan. 712, 313 P.2d 1105 (1957).

These elements have not been established in this case. Appellants here have wholly failed to show that any promise, false representation or concealment by appellees induced any detrimental reliance by appellants.

Appellants assert the following facts as supporting their argument for equitable estoppel: (1) the letters exchanged among Breyfogle, Jones and Gagel in early May 1967; (2) the fact that appellants deposited the balance of the purchase price and were required to pay interest on the money borrowed for this purpose and appellees were aware of the deposit and remained silent in the face of it; (3) the fact that appellants' earnest money was not returned to them; (4) the fact that Ralph Beckett admitted at trial that until the spring of 1970 he felt a moral obligation to continue with the contract; (5) the fact that appellees asserted the existence of this contract as a defense in the *Trail Realty* litigation; and (6) the fact that the value of the property has increased four-fold since the date of the contract.

It should be noted at the outset that the only arguable detriment in this case is appellants' failure timely to elect to waive the title defect or their deposit of the balance of the purchase price. In order to prevail on their estoppel theory, appellants must establish that they sustained one or the other of these detriments as a result of relying on some inducement made by appellees.

 Clearly, their failure to timely waive the title defect posed by the *Trail Realty* litigation cannot be attributed to appellees. Appellants have repeatedly admitted that they would not, in any case, have waived that title defect. (See, e.g., appellants' Brief at p. 11). Thus their failure to exercise the election available under the contract was not caused by any action, inaction, or inducement on the part of appellees, and cannot furnish the basis for the estoppel urged by appellants.

 There remains only the deposit of the balance of the purchase price. Here, again, any detriment so sustained by appellants was not caused by appellees for they did nothing to induce the deposit. The Breyfogle letter of May 3, 1957, states only that "The question thus arises as to what position George Gagel may elect to take under these circumstances so I am sending Chuck Jones copies of the above instruments for his information and that he may advise Mr. Gagel." This language cannot by any stretch of the imagination be construed as suggesting that appellants deposit the balance of the purchase price. Nor can any such inducement be divined from appellees' failure to return the earnest money. If there existed an affirmative obligation on appellees to tender return of the earnest money, such obligation did not mature until *after* expiration of the thirty-day period provided for the exercise of the appellants' election to waive title defects. Appellants deposited the balance prior to the expiration of this period. Accordingly, appellee's retention of the earnest money could not have triggered the appellants' deposit.

 The logic of chronology compels a similar result with respect to appellants' argued reliance on representations made by appellees during the *Trail Realty* litigation: such representations could not have induced the deposit made in April 1967. Logic similarly forecloses any estoppel claim based on the fact that appellees were silent in the face of the deposit. Clearly, such silence could not have induced the deposit, and inducement is an essential element of the doctrine of equitable estoppel. An estoppel cannot be predicated on the unilateral, uninvited act of the party asserting the estoppel.

Appellants also argue that appellees are estopped because at trial Ralph Beckett admitted that he had felt a moral obligation to continue with the contract, at least through the spring of 1970. It is not contended that these feelings were ever communicated to appellants or played any part in their deposit of the balance of the purchase price. Appellants cite the court no authority for the proposition that contracts are to be construed and enforced in accord with the subjective, uncommunicated moral sensibilities of the parties and the court knows of none. Appellants also argue that the contract should be enforced because the value of the property has increased substantially in the interim. Again, appellants cite the court no authority for their contention and the court knows of none.

Appellants have failed to show that appellees made any false representations or promises or concealed any facts from appellants or that the acts and omissions of appellants were in fact induced or prompted by appellees. Accordingly, the doctrine of equitable estoppel does not apply to this case.

### Whether Appellees Waived the Absolving Clause

In that portion of their brief devoted to waiver, appellants first contend that "[i]f Beckett had a right to declare the contract null and void or deny its validity, he waived it." (Appellants' Brief, p. 28). This argument misconstrues the contract by assuming that the absolving clause required an election or declaration on appellees' part. It did not. It was self-executing. Under the contract appellees had no power or obligation with respect to the absolving clause. No action or inaction on their part could affect the absolving clause. Hence, the fact that they did not declare the contract null and void cannot be raised against them; they were not obligated to make any such declaration. See generally, Zeigler v. Conger, 204 Kan. 143, 460 P.2d 515 (1969); Daniel v. Leben, 188 Kan. 344, 362 P.2d 634 (1961). Having no such obligation, they cannot be held to have waived same. One having no affirmative duty to speak cannot be held to a waiver by his silence.

Also in support of their waiver theory, appellants again assert their contention that "Having elected to extend the time for performance, and acting in accordance therewith for four years, Beckett cannot now say the contract is null and void." We have earlier held that this contention does not support an estoppel. Neither does it establish waiver. At the heart of the waiver contention is the assumption that appellees chose one course of action over another and so are bound by the election. The Kansas court has held that

A "waiver" is an intentional renunciation of a claim or right and exists only where there has been some absolute action or inaction inconsistent with that claim or right.

"A waiver of a contract right implies a voluntary and intentional renunciation of it, and some positive act or positive inaction inconsistent with the contract right is necessary to create a waiver." (citations omitted) *Proctor Trust Co. v. Neihart*, 130 Kan. 698, 288 P. 574 (1930).

To establish a waiver here, appellants must show some positive action or inaction by appellees inconsistent with retention of the absolving clause, and appellants must show that such action or inaction occurred at a time when the absolving clause was still operative. For, according to the absolving clause, the contract became null and void *thirty days* after the title insurance commitment was refused. Any waiver could be effective only if made during this thirty-day period because after that time, the contract was dead, and no action or inaction by appellees could operate to waive any rights under it. See, *Daniel v. Leben*, 188 Kan. 344, 362 P.2d 634 (1961). Appellants have not shown the court any action or inaction on the part of appellees during this thirty-day period which can be construed as a waiver of their rights under the absolving clause. The only actions of appellees within this period are the Breyfogle letter and appellees' silence when appellants deposited

the balance of the purchase price. As discussed above, the Breyfogle letter does not in any way suggest a waiver of the absolving clause. Nor may appellees' silence be construed as a waiver. The Kansas court has noted that "It is a general rule that mere indulgence or silence cannot be construed as a waiver, unless some elements of estoppel can be invoked." *Long v. Clark*, 90 Kan. 535, 135 P. 673 (1913). *See also, Nelson v. Robinson*, 184 Kan. 340, 336 P.2d 415 (1959). As discussed above, the elements of estoppel are not present here. Appellees did not explicitly or implicitly waive the absolving clause.

### Judicial Estoppel

Appellants contend that the fact that in the *Trail Realty* litigation appellees pleaded and argued the validity of this contract estops them from now denying its validity. Appellees assert that under Kansas law a person not a party to previous litigation may not in a subsequent suit estop a person who was a party to the previous litigation as to any inconsistent position taken therein. Appellees contend that any inconsistency in their position in the *Trail Realty* suit may be offered only as evidence and creates no estoppel because appellants were not parties to the *Trail Realty* suit and because the validity of this contract was not at issue in the *Trail Realty* suit and was not decided in that action.

The trial court found that in the *Trail Realty* litigation appellees had argued that they were obligated to sell to appellants and had argued this obligation as a reason why specific performance should be denied Trail Realty. (Finding Number 19). However, the trial court also noted that the validity or invalidity of this contract was not a controlling factor in the *Trail Realty* suit and was not decided in that action. *Trail Realty v. Beckett*, 462 F.2d 396 (10th Cir. 1972). Appellants were not parties to the *Trail Realty* suit.

■ Kansas law is clear that a position taken by a party in one suit cannot be claimed as working an estoppel in another suit in favor of a party who was a stranger to the first suit. *Mickadeit v. Kansas Power & Light Co.*, 174 Kan. 484, 257 P.2d 156 (1953); *Betts v. Gilbert*, 149 Kan. 431, 87 P.2d 637 (1939); *Kington v. Ewart*, 100 Kan. 49, 164 P. 141 (1917); *First Nat'l Bank v. Duncan*, 80 Kan. 196, 101 P. 992 (1909); *Peterson v. Warner*, 6 Kan.App. 298, 50 P. 1091 (1897).

Appellants assert that a contrary view is expressed in *Wilson v. Stephenson*, 143 Kan. 91, 53 P.2d 874 (1936). In that case an estoppel was found to exist as to one acting in a fiduciary capacity. However, *Wilson* did not involve the question whether a *stranger* may assert judicial estoppel. In *Wilson* the previous suit had been brought by a creditor of the estate against the *Wilson* defendant in her capacity as administratrix to recover an asset of the estate. At the conclusion of that litigation defendant resigned as administratrix. The action in *Wilson* was brought against her by her successor, as administrator de bonis non, to recover the same estate asset. The court in *Wilson* noted that cases forbidding estoppel by strangers did not "apply to the situation here because of the fact that the creditors and heirs are the only litigants here concerned either by themselves or their representative, the administrator de bonis non." 53 P.2d at 876. The court distinguished the *Kington* and *Duncan* cases for the very reason that those cases did involve strangers. The *Wilson* case simply does not support the proposition that a stranger may assert judicial estoppel. Indeed, to the extent that *Wilson* sheds light on the question, it supports appellees' position.

■ Appellants also rely on the reasoning of the Wyoming court in *Hatten Realty Co. v. Baylies*, 42 Wyo. 69, 290 P. 561 (1930). The *Hatten* decision does not govern this case which arises under Kansas law and as to which there is contrary Kansas precedent. Appellants may not assert the doctrine of judicial estoppel against appellees.

### Conclusion

By its terms, the contract sought to be enforced became null and void in May, 1967. The Kansas Statute of Frauds requires that

modifications of the magnitude necessary to avoid this result are unenforceable unless in writing and signed by the party to be charged. No such writing occurred in this case. Nor did appellees waive the absolving clause. Nor did any act or omission of appellees induce any detrimental reliance on the part of appellants, so the doctrine of equitable estoppel does not apply in this case. Nor were the appellants parties to a previous suit involving this land and so they may not urge estoppel on the basis of any inconsistencies between appellees' position in this action and their position in that previous action. Specific performance was properly denied by the trial court.

Affirmed.